## Eaton vs. Tallmadge and another.

*Action by tax title claimant : Proper defendant.— Redemption from tax sale.— Evidence as to heir at law.— Partition by act of parties.— Bill of exceptions.*

1. A tax title claimant may maintain an action (under § 3, ch. 141, R. S.) against one who merely " claims title," if it appears that no person is in actual possession of the land; but not if the contrary appears.

2. Where the question is, whether a person who undertook to redeem land from tax sales was the heir at law of a former owner, the fact of marriage and the age of such alleged heir may be shown by evidence based upon general repute, the conduct of the members of the family toward each other, and the statements of relatives.

3. One offering to redeem from a tax sale is not required to pay for the recording of the tax deed.

4. Where one of two tenants in common, each owning an undivided half, conveyed the whole of the north half, and the other subsequently conveyed the south half, this was a complete and binding partition.

5. A statement in a bill of exceptions, that an objection made by appellant to evidence on a specified ground was overruled, does not show that the *fact* was as is assumed in the objection.

ERROR to the Circuit Court for *Fond du Lac* County.

Ejectment, for two undivided halves of the south half of a certain lot four, in said county, brought by *Eaton* against *Tallmadge* and *Pomeroy*. Plaintiff's evidence included the following deeds : 1. A tax deed of the whole land to one Loomis, dated April 24, 1862, upon a sale for taxes of 1859. 2. A deed of the same from Loomis to one Knapp, June 24, 1862. 3. A deed of the same from plaintiff to Knapp, August 26, 1859 ; a mortgage back for the purchase-money, of the same date, with a record of the foreclosure of said mortgage (commenced December 23, 1862), and a sale of the premises to plaintiff (confirmed by the court), and a sheriff's deed based thereon. 4. Tax deeds of the whole land, to plaintiff, made in 1845, 1854, 1859, and 1861. 5. Tax deeds of one undivided half of the land, to plaintiff, made in

Eaton vs. Tallmadge and another.

1855, 1856 and 1858. A witness for plaintiff testified, that, in the summer of 1865, he occupied the south half of said lot under plaintiff, and put plaintiff's share of the crops into the house on the place; and that the defendant *Pomeroy* came into the house before the year was out, without any leave from witness, and was there in May, 1866. Plaintiff, as a witness for himself, testified, *inter alia*, that some time in the winter of 1865 or 1866, he found *Pomeroy* in possession, and requested him to leave, but he would not; and witness had "seen him there several times since." "In the spring of 1866, a week or two before the commencement of this action, I had a conversation with the defendant *Tallmadge*, and he said he had bought the land and should hold it against me if he could. I don't know who was in possession the day the suit was brought. *Pomeroy* was, a short time previous."

The court, against plaintiff's objection, granted a nonsuit as to *Tallmadge*, "on the ground that he was not shown to be in possession."

Defendant showed title to the whole land in one Hathaway in 1835, and the subsequent deed from Hathaway to one Schoolcraft, of an undivided half of it, in the same year; a deed from Schoolcraft to Hurlburt, from the latter to Newbury, and from him to Lyon, and from Lyon to John F. Meade, the deed last named being dated June 4, 1845. He seems also to have put in evidence a deed of the *south half* of said land from Edward L. Meade to himself, made in March, 1866. Objections taken by plaintiff to these deeds, and overruled by the court, will appear from the opinion. T. R. Hudd, Esq., for defendant, testified: "I knew John F. Meade. He has been dead 18 years, nearly. His wife's name is Mary; she is now Vivaldi. I know Edward L. Meade; he is the son of Mary Meade; he is 23 years old;*

---

* The action was tried in May, 1868.

he is the sole heir of John F. Meade. I have known the widow since 1853 — after the death of her husband. I never was personally acquainted with him. I first became acquainted with E. L. Meade in 1854, when I became his attorney. All I know about his age is by the statement of his relatives. All I know of their marriage is, she was called the wife of J. F. Meade. I have a certificate of their marriage." It was afterward shown that E. L. Meade had redeemed, or attempted to redeem, an undivided half of said land from all the tax sales for which deeds had been issued to plaintiff as above stated; but it appeared that he had not paid one-half the expense of recording the several tax deeds. Defendant also put in evidence (against plaintiff's objection to them as immaterial) the following deeds : 1. From plaintiff to one Laprarie of the *north half* of said land, dated August 26, 1858. 2. Mortgage of same from Laprarie back to plaintiff; and record of the foreclosure of said mortgage, sale and sheriff's deed to Loomis, dated in August, 1862. 3. Deeds by which said north half was conveyed from Loomis, through several intermediate grantees, to *Tallmadge*, the deed to the latter having been delivered before the commencement of this action.

The court instructed the jury, that, as the tax deed to Loomis, of April 24, 1862, was not shown to be void, it must be presumed that it conveyed to him all the title that plaintiff, or those claiming under him, had to said land up to that day ; that the title thus acquired by Loomis, and by him conveyed to Knapp, passed to plaintiff by the subsequent foreclosure of the mortgage from Knapp to plaintiff, and the sale under that foreclosure ; that, if they found that Edward L. Meade was the sole heir of John F. Meade, and, before he was twenty-two years of age, had redeemed from the tax sales, upon which the tax deeds to Loomis and plaintiff were issued, an undivided half of said land, then plaintiff's title under said tax deed would be extinguished ; that,

in making such redemption, the minor was not bound to pay for the recording of the tax deeds; that, if the jury found that the plaintiff had made, or assented to, a partition of said land, and had designated the north half of it as the part he elected to hold, and had conveyed that half in severalty as his interest in the whole land, and held the south half only subject to redemption by the heirs of Meade, and Meade's heirs had redeemed their interest, and conveyed it to the person under whom the defendant (*Pomeroy*) occupied, and claimed title at the commencement of the suit, then plaintiff could not recover; and that it was for the jury to determine, from the evidence, whether the acts of plaintiff could be construed into a partition by him of the land with those claiming as heirs of Meade.

Verdict and judgment for defendant; and plaintiff sued out his writ of error.

*R. P. Eaton*, plaintiff, in person, argued, among other things, that the testimony of Hudd was improperly received, because it was mere hearsay, and not the best evidence within reach of defendant, the witness testifying that he had the marriage certificate in his possession. 2. That, even if his deeding the north half of the land in 1858 was a partition thereof with the heirs of Meade, this would have no greater effect than a quitclaim to them, at that time, of the south half, would have had; and such deed would not affect his subsequently acquired interest in that half, under the tax deed to Loomis in 1862. 3. That the defense was, at any rate, only an equitable one, and could not be made available in ejectment under a general denial, or without being specially set up in the answer. 4. That a party seeking to redeem from a tax sale is bound to pay for the recording of the tax deed, under section 130, chapter 18, R. S.; or, if that section should be held to be repealed by chapter 22, Laws of 1859, then the cost of such recording is a subsequent charge

on the land, authorized by the provisions of said act, and must be paid under sections 18 and 25 thereof.

*E. S. Bragg*, for defendant in error, to the point that the conveyance, by one tenant in common, of a part of the land, by metes and bounds, to a stranger, will operate as an estoppel against the grantor, cited 1 Lomax Dig. 501; 4 Kent's Com. 368; 1 Wash. C. C. R. 438; 12 Mass. 474.

PAINE, J. The nonsuit as to the defendant *Tallmadge* seems to have been properly granted. It is true that, if it had appeared that no one was in the actual possession of the lands, an action might have been sustained against *Tallmadge*, on his "claiming title," as sworn to by the plaintiff. Sec. 3, chap. 141, R. S.; *Knox v. Cleveland*, 13 Wis. 250; *Bangor v. Empie*, 5 Hill, 48. But it had already appeared, from the plaintiff's evidence, that *Pomeroy* was in the actual possession of the land. In such case, the action must be against him, and not against one merely claiming title and out of possession. Here there was no proof that *Tallmadge* was, or ever had been, in possession.

The defendant then introduced evidence tending to show title in *Tallmadge* to the north half of the land in question, derived, through several successive conveyances, from the plaintiff himself. That *Tallmadge* had this title, the plaintiff does not seem to contest.

The defendant then offered evidence tending to prove title to an undivided half in one J. F. Meade. Among other conveyances thus offered, as stated in the bill of exceptions, was "a certified copy of a deed from Hathaway to H. R. Schoolcraft, etc."

The bill, without setting forth any thing further in regard to this copy, proceeds as follows: "Plaintiff's objection, that it is only a certified copy of the record of a certified copy, overruled, and plaintiff excepts." This is not sufficient to present the question sought to be

raised. The copy offered is not set out. There is no statement that it was only a copy of a certified copy. The fact that the plaintiff's objection upon that ground was overruled, does not show it. It may have been overruled because not true in fact.

The same remark applies to plaintiff's subsequent objection to a certified copy of a deed, because the certificate of the clerk, certifying to the authority of the officer before whom it was acknowledged in New York, had no seal. It may have been overruled because the certificate had a seal. There is certainly nothing in the bill to show that it had not.

After tracing title to an undivided half to J. F. Meade, the defendant then offered the testimony of Hudd, to show that Meade had been dead about eighteen years, and that Edward L. Meade, then twenty-three years old, was his only son and heir at law. His knowledge upon these subjects was that which usually exists as to the fact of marriage, and the age of children, among those acquainted with families, but who were not actually present at the marriage of the parents or the birth of the children. General repute, the conduct of the members of the family toward each other, and the statements of relatives, constitute the groundwork of such knowledge. That such evidence is proper upon such questions, see 1 Greenleaf's Ev. §§ 103, 104.

The only remaining questions necessary to be noticed arise upon the instructions. The plaintiff claimed title through tax deeds. The defendant sought to avoid that title by proving a redemption, by Edward L. Meade, of the undivided half inherited by him, within a year after he came of age. The general instruction, that he had the right so to redeem, was clearly correct. The judge was also right in excluding from the amount to be paid on redemption, one-half of the costs of recording the tax deed. The other instructions relate to the effect of the plaintiff's conveyance of the north half specifically, to estop him from claiming any further interest in the south

half, if the party owning the other undivided half saw fit to acquiesce, and accept the south half for himself. In this case, the heir of Meade, having redeemed his undivided half, conveyed specifically the south half, the title to which had also become vested in *Tallmadge*. The instructions upon this subject were also correct. Where there are two tenants in common, each owning an undivided half of land, neither can make a partition that will be binding upon the other, by assuming to convey either half specifically. But if one does so convey, we think the other would be at liberty to acquiesce, and to accept the remaining half. And if he should do so, by conveying that specifically, the two conveyances would operate as a complete and binding partition.

This was the substance of the instruction upon this point.

*By the Court.* — The judgment is affirmed, with costs.