Opinion delivered May 10, 1887.

No. 5320.

JEFFERSON PEAK *v.* MARIA LOUISA SWINDLE.

1. STATE CONSTITUTION.—The Constitution of 1869, ordained and established by the will of the people of Texas by their votes at the election held the last day of November and the three first days of December, 1869, became operative when adopted by them, and no portion of it was suspended in its operation to await the action of Congress in admitting Texas to representation. The fact that the State was afterwards denied representation can not affect the question.

2. SAME.—The Constitution of 1869 thus adopted by the people became, from the date of its adoption, the supreme law of Texas, regulating, so far as it assumed to do so, the rights of persons and of property.

3. SAME.—The approval of that Constitution by Congress was only a condition precedent to the representation of the State in the Federal Legislature, and this condition of the reconstruction laws did not affect it, status as the organic law of Texas for all the purposes of State government from the date of its ratification by the people.

4. SALE BY TENANT IN COMMON.—A sale by one tenant in common of a distinct part of a large tract of land will be protected, and the part so sold set aside to the vendee, when it can be equitably done, if it does not exceed the share to which the cotenant vendor was entitled.

5. PARTITION.—In a proceeding to repartition land by one who claims, and is entitled to a larger proportion of the entire tract than was set aside to

him in the former partition, which was effected during his infancy, and whose right is based on a title not adjudicated in the former proceedings the share to which he is entitled must be obtained by pro rata contributions from those cotenants who had received more than their just proportion of the land.

APPEAL from Dallas.    Tried below before the Hon. A. S. Lathrop.

Suit of trespass to try title and for partition, brought by C. C. Swindle, his wife, Mary Louisa Swindle, and others, against Jefferson Peak and other persons.

Suit was begun August 18, 1874.    On the twenty-second of October, 1881, Maria Louisa Swindle and her husband sought to recover an undivided three-eighteenths, and the plaintiff D. B. Grigsby an undivided two-eighteenths of the James A. Sylvester six hundred and forty acre survey in Dallas county, and of a certain portion, described by metes and bounds, of the John Grigsby league and labor survey in the same county.

The petition, as to the five-eighteenths sought to be recovered, was in trespass to try title, and alleged that defendants were the owners of the remaining thirteen-eighteenths of the surveys, and asked for partition.

A number of defendants, among them appellee Jefferson Peak, were, upon motion, each by the court granted a severance, and the judgment appealed from was rendered upon the trial had between plaintiffs and defendant Peak and other parties who had purchased from Peak who intervened.    The character of plaintiff's title was as follows: John Grigsby and Louisa Grigsby were married in the State of Illinois, and emigrated to Texas in the year 1835, and settled in Houston county and lived there until the time of their death.    Grigsby died in 1841; his wife, Louisa, survived him and afterward married Balis Edens.    He left surviving him nine children.    Grigsby had only two children by his wife Louisa, viz., a daughter, Emeline, dead, and the plaintiff D. B. Grigsby, who was born in 1841.    Grigsby's widow, who married Balis Edens, died in 1843.    The only issue of this marriage was one daughter, Maria Louisa Edens, born in 1843, who was the plaintiff Maria Louisa Swindle, she having married C. C. Swindle.

The land claimed by the defendant is about two hundred acres of the John Grigsby league and labor survey.

Louisa Edens (formerly Louisa Grigsby) had only three chil-

dren, viz., Emeline Grigsby and the plaintiffs D. B. Grigsby and Maria Louisa Swindle. In 1848 a partition of the whole of the land was had in the course of administration upon the estate of John Grigsby, and the whole of the land was divided equally among nine persons as the children of John Grigsby, giving to each one two-eighteenths. In this partition two-eighteenths of the land was set apart for each plaintiff, D. B. Grigsby and Emeline Grigsby, but nothing for the plaintiff, Maria Louisa Swindle.

After D. B. Grigsby arrived of age he sold the land set apart for him, and Emeline Grigsby sold to Jefferson Peak the land claimed by him, which had been set apart to her in the same partition. The property in controversy was the community property of John Grigsby and his wife Louisa Grigsby.

Peak disclaimed any interest in any of the lands described in plaintiff's petition, except about two hundred acres of the John Grigsby league and labor survey, which he set out by metes and bounds. As to the land so claimed by him, his defenses, as pleaded, were in substance as follows: First. A general demurrer. Second. General denial. Third. A plea that he bought in, and has been in possession of since 1855, and plaintiffs could not attack his title after so long a time. Fourth. That the land was administered in the succession of John Grigsby in the probate court, and in a proceeding had in the course of that administration, to which the plaintiffs in this case, then being minors, were parties, the land was by a decree of the court partitioned, and defendant acquired his land under that decree. Fifth. That D. B. Grigsby accepted the portion of land set aside for him in said partition and afterward sold the same, referring in his deeds to his vendees to said partition as his source of title, and was thereby estopped from claiming any of the land then partitioned. Sixth. That the plaintiff Maria Louisa Swindle was a party to said partition proceedings, and was therefore estopped by said judgment. Seventh. That plaintiffs' remedy, if any they ever had, was by appeal from said judgment. Eighth. The statutes of limitation of three, five and ten years. Ninth. That defendant was a purchaser for valuable consideration, in good faith, without any notice of plaintiffs' title. Eleventh. That plaintiff's mother administered on Grigsby's estate and returned an inventory, on which she returned, as a part of John Grigsby's estate, the whole land described in plain-

tiffs' petition, and that thereby plaintiffs were estopped from asserting that said land was not a part of his estate.

Plaintiffs, in reply to defendants' plea of statutes of limitations, alleged that they, at the time their cause of action accrued, were minors, and that sufficient time had not elapsed since the removal of their disabilities to bar them. The land claimed by defendant was no part of the land which had been set apart to D. B. Grigsby under the partition, and which had been sold by him.

Verdict for the plaintiff, Maria Louisa Swindle, against defendant, Jefferson Peak, and a verdict for defendant, Jefferson Peak, against plaintiff, D. B. Grigsby; judgment accordingly.

*Stemmons & Field,* and *Leake & Henry,* for appellants, on their proposition that the court erred in refusing to give in charge that the Constitution of 1869 did not take effect as to the article in its suspending the statute of limitations until it was accepted by Congress on the thirtieth day of March, 1860, cited Grisby v. Peak, 57 Texas, 142; Bender v. Crawford, 33 Texas, 745; Bentinck v. Franklin, 38 Texas, 458; Wood v. Welder, 42 Texas, 409; Porterfield v. Taylor, 60 Texas, 266; McGregor v. Goldammer, 3 Texas Law Journal, 476; volume 2 Paschal's Digest, article 1138; Levy v. Stewart, 11 Wallace, 253; Griffin v. Cunningham, 20 Grattan, page 35; Plowman v. Thornton, 52 Alabama, 567; Williams v. Douglass, 21 Louisiana, 468; Foster v. Daniels, 39 Georgia, 39; Scruggs v. The Mayor, 45 Alabama, 220, 399; Leachman v. Musgrove, 45 Mississippi, 511; Real v. The People, 42 New York, 270; The State v. Williams, 49 Mississippi, 640; Lockhart v. Horn, 1 Wood's Civil Cases, 635.

*Richard Morgan, jr.,* and *Jeff Word, jr.,* for appellee: On their proposition that the probate court did not have jurisdiction in the administration of John Grigsby's estate, to partition land belonging to the estate of Louisa Grigsby, and if the decree of that court relied upon by appellant Peak had attempted to make such a partition, that decree would have been to that extent void, cited Hartley's Digest, articles 1083, 1108; Guilford v. Love, 49 Texas, bottom page 731; Booth v. Todd, 8 Texas, 137, 138; Withers v. Patterson, 27 Texas, 495; Feather v. Strohoecker, 3 Pennsylvania State, 505; Romig's Appeal, 8 Watts (Penn.), 415; Snyder's Appeal, 36 Pennsylvania State, 166; Grice v. Randall, 23 Vermont, 239.

On their proposition, that the Constitution of 1866 was superseded by the Constitution of 1869, and the latter took effect from the time that it was voted upon and adopted by the people in December, 1869, they cited Campbell v. Fields, 35 Texas, 751–755; Clegg v. The State, 42 Texas, 605–607; The State v. Williams, 49 Mississippi, 661 et seq.; In re Daniel Eckert, National Bankruptcy Register, volume 10, pages 6-9; same case, Hughes' Civil Cases, 187-189; United States Statutes at Large, volume 16, pages 40, 80, 1129, 363, Id., volume 15, page 73; Irvin's Revised Code of Georgia (1873), page 904; Miscellaneous Documents, United States Senate, Second Session, Forty-first Congress.

STAYTON, ASSOCIATE JUSTICE.  A history of this case may be found in the cases of Caruth v. Grigsby, and Grigsby v. Peak, reported in 57 Texas.

In the case last mentioned, it was held that the title of the appellee was superior to that asserted by the appellant, and that she was entitled to recover unless her right was defeated by limitation.

The brief of counsel for appellant presents some questions which were definitely settled on the former appeal, upon facts the same as are presented by the record before us; but as to those we see no reason to doubt the correctness of the former decision and a further consideration of them becomes unnecessary.

The appellee, being a minor, married on August 24, 1859, and on the trial the court instructed the jury as follows:

"You are instructed that the statute of limitations did not begin to run against the plaintiff, Maria Louisa Swindle, until the date of her first marriage, on the twenty-fourth of August, 1859; and you are further instructed that the statute of limitations did not run from January 28, 1861, until the second day of September, 1866, when the statute of limitations commenced running again; and if you find the period of five years elapsed between the twenty-fourth of August, 1859, up to the twenty-eighth of January, 1861, and then from the second day of September, 1866, up to the date the Constitution of 1869 went into effect, viz., December 3, 1869, you will find that the plaintiff Maria Louisa Swindle's claim is barred by the statute of limitations.

"If, however, you find that five years had not elapsed between the times above specified and the adoption of the Constitution

of 1869, you are instructed, then, that the statute of limitations against Maria Louisa Swindle commenced running on the twenty-fourth of August, 1859, the date of her first marriage, and continued so to run until the twenty-eighth day of January, 1861, when it ceased to run until the thirtieth day of March, 1870, and then commenced to run again, and continued so to run until the eighteenth day of August, 1874, the date of the institution of this suit.

"You are therefore instructed, if the time which elapsed from the date of her marriage up to the twenty-eighth day of January, 1861, when added to the time which elapsed between the thirtieth day of March, 1870, and the eighteenth day of August, 1874, did not amount to seven years, then the said Maria Louisa Swindle is not barred by the statute of limitations."

The appellant asked the court to instruct the jury that the Constitution of 1869 did not take effect as to the article in it declaring that "the statutes of limitation of civil suits were suspended by the so called act of secession of the twenty-eighth of January, 1861, and shall be considered as suspended within this State, until the acceptance of this Constitution by the United States Congress," until March 30, 1870. This was refused.

If the statute ran from September 2, 1866, until March 30, 1870, the adverse possession shown by the appellant continued for a sufficient period of time to bar the right of the appellee; but if the Constitution of 1869 became operative at the time it was ratified by the people, then the period of adverse possession, while the statutes of limitation were operative, was not sufficient to bar her right.

In the former disposition of this case, this court assumed, without particularly considering when the Constitution ratified by the people in 1869 took effect, that it did not take effect until March 30, 1870; and the majority of the court held, assuming this to be true, that the condition of the country was such between September 2, 1866, and March 30, 1870, as to give effect to the constitutional provision above quoted, even in a case in which the statutory bar would have been complete under the statutes prior to March 30, 1870, but for the disturbed condition of the country.

The inquiry as to when the Constitution ratified by the people in 1869 became operative, is now directly presented; and if it be true that it so became when ratified by the people, it is clear

that the instructions given were correct, and that the judgment as to the appellee must be affirmed.   Under the acts of Congress known as the "Reconstruction Laws," delegates were elected to convene and frame a Constitution for this State.   The delegates assembled in convention in June, 1868, and adjourned on August 31 following, but again met in convention on December 7, 1868, and finally adjourned on February 6, 1869, after having framed a Constitution.

Under the act of Congress of date April 10, 1869, the President of the United States, by proclamation, directed an election to be held, beginning on November 30, 1869, at which the people were called upon to ratify or reject the Constitution which had been framed by the convention.   This election was held on November 30 and the first three days of December, and resulted in the ratification of the Constitution thus framed by a large majority.

The act of Congress providing for the submission of the Constitution to the vote of the people also provided for the election, at the same time, of members of Congress, members of the State Legislature, and all the State officers provided for by the Constitution to be submitted.   The same act fixed a time at which the members of the Legislature should meet, if the Constitution was ratified; and, in accordance with the requirement, the Legislature met on February 8, 1870, and subsequently ratified the thirteenth, fourteenth and fifteenth amendments to the Constitution of the United States, and at the same time elected two Senators to represent the State in the Congress of the United States.

By the act of March 30, 1870, this State was admitted to representation in Congress, that act reciting the fact that "the people of Texas *have* framed and *adopted* a constitution of State government, which is republican;" and further, that "the Legislature of Texas *elected under said Constitution has ratified* the fourteenth and fifteenth amendments to the Constitution of the United States; and, whereas, the performance of these several acts in good faith is a condition precedent to the representation of the State in Congress; therefore, the said State of Texas is entitled to representation in the Congress of the United States."

These acts, which led to the formation of the Constitution, its adoption and the admission of the State to representation in Congress, not only evidence the opinion of Congress that the

Constitution took effect before the State was admitted to representation, but also evidences the intention of the people, from whose will alone a constitution could have an existence, that it should be operative prior to the time the State was admitted to representation.

If, however, we look to the instrument itself, the evidence of the intention of the people to make the Constitution operative from the time of its ratification by the people is still more conconclusive. The preamble peclares that, "We, the people of Texas, * * * * do hereby ordain and establish this Constitution." When did the people "ordain and establish this Constitution?" As their act, and not the will of Congress, ordained and established it, this must have been accomplished when the will of the people was manifested at the election held on the last day of November and the first three days of December, 1869. At no other time was expression of the will of the people as to whether or not the Constitution framed by the convention should become the Constitution of the State ever given.

The Constitution fixed the terms of office for State officers, and declared that these should run from the day of general election; and the election declaration passed by the convention, recognizing that fact and intending to leave no uncertainty as to the time when the terms of all State, district and county officers should commence, declared that "the said election for State, district and county officers shall be conducted under the same regulations as the election for ratification or rejection of the Constitution, and by the same process. The returns of elections shall be made to the commanding general, who shall give certificates of election to the persons chosen for the respective offices. The officers, as elected, *shall commence the discharge of the duties of the office for which they have been chosen as soon as elected and qualified, in compliance with the provisions of the Constitution herewith submitted,* and shall hold their respective offices for the term of years prescribed by the Constitution, *beginning from the day of their election,* and until their successors are elected and qualified."

The same declaration also fixed a time at which the Legislature elected under the Constitution should meet, as did the Constitution fix the congressional, senatorial and representative districts, in which Congressmen, Senators and Representatives were required to be, and actually were, elected at the same election at which the Constitution was adopted. All these offi-

cers were elected and held *under the Constitution,* and the members of the Legislature were by its terms required, as a Legislature, to do acts which *necessarily preceded the admission of the State to representation in Congress.* (Act of Congress, April 10, 1869; Pas. Dig., art. 1136; Constitution, art. 3, sec. 36.)

The entire Constitution bears evidence that it was the intention of the people that it should become operative when adopted by them, and there is nothing in it to indicate an intention that any part of it should be inoperative until Congress admitted the State to representation.

If such an intention was evidenced, it should be given effect, for it would be competent for the people of a State, the sole Constitution making power, to determine that a Constitution should not be operative until the happening of a future event dependent upon the action of some other body; but, as no such intention is evidenced, and as a valid State Constitution might exist without reference to the will of Congress, and although the State by that body was denied representation, we are of the opinion that the Constitution became operative in all its parts from the time it was ratified by the people.

That Congress deemed the condition of the country such, at the time the Constitution was adopted, as to require continuance for a period thereafter of a provisional government, and to deny to the State a representation in Congress until it was satisfied that the Constitution was in harmony with that of the United States, and that the time had come when the provisional government should be withdrawn, is a matter of no consequence in the consideration of the question before us. Subject to the Constitution of the United States, laws made in pursuance thereof, and treaties made under the authority of the general government, the Constitution under consideration became the supreme law of this State, regulating, so far as it assumed to do so, the rights of persons and property from the date of its adoption by the vote of the people.

In accordance with these views, it was held in Campbell **v.** Fields, 35 Texas, 752, that section 47, article 12, of that Constitution gave a mechanic's lien for work done during the months of January, February and March, 1870.

In the course of the opinion it was said that "the approval of the Constitution by Congress was only a condition precedent to the representation of the State in the national legislature; and this condition of the reconstruction laws did not prevent the

Constitution from becoming the organic law of the State, on its ratification by the people, for all the purposes of State government."

In The State v. Williams, 49 Mississippi, 661, the same ruling was made as to the time when the Constitution of the State of Mississippi became operative. The Constitution under consideration in that case was framed under the reconstruction laws operative in this and other Southern States; and in that case, as in this, it was contended that the Constitution did not go into effect until the passage of the act of Congress admitting the State to representation in Congress. This proposition was denied by the court, and it was held that the Constitution went into operation as the fundamental and organic law of the State from the time of its ratification and adoption by the people.

In re Deckert, 2 Hughes's Civil Cases, United States, 187, in which the opinion was delivered by Chief Justice Waite, it became necessary, in order to determine the validity of an exemption claimed by a bankrupt, to ascertain when the Constitution of the State of Virginia, adopted under the same reconstruction laws as was the Constitution under consideration in this case, took effect. The same contention was made in that case as in this.

After commenting on the laws which led to the adoption of the Constitution of Virginia, illustrative of the intent of Congress as well as of the people of Virginia, the court said: "It is true that the government was not fully organized in all its departments under the Constitution, and that the United States retained its supervisory powers, under the reconstruction acts, until the final action of Congress. Complete organization of the government, however, was not necessary to give effect to the Constitution, and no modification of the particular provision now under consideration was ever attempted by the United States. In our opinion, the Constitution of Virginia took effect, so far as it related to the provision for exemptions, on the sixth of July, 1869, the day of its ratification by the people."

It is apparent, from the uncontroverted facts, that a less period than five years, excluding the period between March 2, 1861, and September 2, 1866, elapsed between the time of the marriage of appellee and the third day of December, 1869, or between the date of her marriage and the date of the official declaration of the result of the election through which the Constitution was adopted, which was made on January 11, 1870. Hence the

bar, which would have resulted from an adverse possession of five years, completed before the adoption of the Constitution, never existed.

With the adoption of the Constitution came a lengthened period of limitation to which, no right having vested through adverse possession under the former laws, there can be no constitutional objection. Section 14, article 12, of the Constitution of 1869 provided that "married women, infants and insane persons shall not be barred of their rights of property by adverse possession, or law of limitation, of less than seven years from and after the removal of each and all of their respective legal disabilities."

That this provision has application to this case is well settled. (Grigsby v. Peak, 57 Texas, 146; French v. Strumberg, 52 Texas, 92; Roemelee v. Luper, Austin term, 1883.) If, then, we add to the time which elapsed between the date of the marriage of the appellee and the twenty-eighth of January, 1861, or even the second day of March of that year, to the time which elapsed between the thirtieth of March, 1870, and the institution of this action, it clearly appears that under no recognized rule was the bar complete, under the provision of the Constitution to which we have referred, when this action was brought. The judgment before us must, therefore, be held conclusive of the fact that the appellee has title as tenant in common with the appellant to such interest in the land claimed by him as was adjudged to her.

It does not follow from this, however, that the appellee will be entitled to have set apart to her, in the ultimate partition, which the plaintiffs seek to have made of all the land described in their petition, any part of the land claimed by the appellant.

The right of the appellee, so far as we can see from the record before us, is to have one-sixth of all the land described in her petition; but in final partition the appellant, who claims through one who was entitled to two-ninths of the land thus described, ought to be protected, if this can be done in making partition of all the land in which his vendor and the appellee had an interest.

Some of the children of John Grigsby, in the attempted partition, each received one-eighteenth part of the entire land more than they were entitled to, while the vendor of the appellant only received one-half of that which she was entitled to at the time the partition was attempted, and has, therefore, so far as

the record shows, only sold one-half of the land to which she was entitled. The share of the appellee ought, if this can be, to be made good out of the parts set aside to the seven children of John Grigsby, who received more than they were entitled to.

The general rule, that a sale by one tenant in common of a distinct part of a larger tract of land will be protected, and the part so sold set apart to the vendor when it does not exceed the share to which the co-tenant vendor was entitled, ought to be enforced in this case, if under the general rules applicable to such cases this can be done without prejudice to other persons. This is the only manner in which the equities existing between the parties can be fairly adjusted.

That there was a severance in this case does not interpose an obstacle to such relief, though through the judgment had on the severance, the right of the appellee as a tenant in common with the appellant has been and may stand established; but so much of the decree as directs partition between the appellant and the appellee will have to be set aside, not only because their equities can not be protected through it, but for the further reason that the reversal of this judgment against D. B. Grigsby (infra), whose appeal from the same judgment is disposed of in a separate opinion, renders that part of the decree directing partition erroneous, and inapplicable to the judgment which may hereafter be rendered between the appellant, appellee and D. B. Grigsby.

The judgment of the district court will therefore be affirmed only in so far as it establishes a co-tenancy between Maria Louisa Swindle and Jefferson Peak, and determines the extent of the interest of the appellee in the tract of land claimed by the appellant, and it is directed that the district court cause no partition to be made until the entire case made by the pleadings of the plaintiffs is disposed of as to all the defendants to this action, after which let partition be made between the plaintiffs and all the defendants of all the land in which the plaintiffs may show an interest, in such manner as will protect the appellant, as far as may be, under the rules hereinbefore referred to, in his title and possession to all the land claimed by him.

*Affirmed and reformed.*