[No. 14805. Department Two. January 9, 1919.]

## J. PERCIVAL JONES, *Respondent,* v. STEPHEN BERG, *Appellant.*[1]

VENDOR AND PURCHASER (125)—BONA FIDE PURCHASER—NOTICE—RECORDS—INDEX. An index of the record of a deed giving the description as parts of lots 5 and 6, is a sufficient compliance with Rem. Code, § 8787, to put a purchaser upon inquiry as to a building restriction in the deed against adjoining property in lot six, granting an easement in eight feet along the common boundary.

SAME (124)—NOTICE—RECORDS IN CHAIN OF TITLE. A deed conveying part of a lot and granting an easement in the remainder, is within the chain of title to the remainder, so as to import notice to subsequent purchasers of the remainder, even though executed by only one of two tenants in common.

EASEMENTS (10)—EXPRESS GRANTS—CONSTRUCTION. A deed covenanting that the grantor will not build upon adjoining property closer than eight feet to the south line of the property conveyed, so that there shall be sixteen feet between the buildings, grants an easement in the north eight feet of the adjoining land.

[1]Reported in 177 Pac. 712.

TENANTS IN COMMON (1-1)—SEVERANCE—GRANTS BY ONE TENANT. A conveyance by one of two tenants in common of part of the common property is valid as a transfer of the grantor's interest, entitling the grantee to equities therein against the nongranting tenant in case of a partition.

SAME (1-1)—CONFIRMATION. Where one of two tenants in common conveys part of the common property, together with an easement in the remainder, pursuant to an oral agreement with his cotenant, a subsequent quitclaim deed by both cotenants of the remainder is a confirmation of the previous oral agreement and a recognition of the easement, avoiding the necessity of a formal partition between the cotenants.

VENDOR AND PURCHASER (126)—BONA FIDE PURCHASER—NOTICE BY RECORD. Where one of two cotenants conveyed part of the common property with building restrictions and subsequently both cotenants conveyed the remainder by quitclaim, their acts and acquiescence amounting to a partition, one claiming by warranty deed through the quitclaim grantee, with notice by record of the previous conveyance, takes with notice of, and is bound by, the building restrictions.

SAME (126). In such case, the fact that the quitclaim of the remainder may have been in satisfaction of the mortgage upon the remainder, prior in time to the conveyance, does not give the quitclaim grantee the right to question the validity of the building restrictions; since the mortgage title was not perfected.

Appeal from a judgment of the superior court for King county, Tallman, J., entered January 30, 1918, in favor of the plaintiff, in an action for an injunction, tried to the court. Affirmed.

*Myers & Johnstone,* for appellant.
*Jay C. Allen,* for respondent.

PARKER, J.—The plaintiff, Jones, commenced this action in the superior court for King county, seeking an injunction against the defendant, Berg, restraining him from constructing a dwelling-house upon his lot in Seattle within eight feet of the north line thereof, which is also the south line of Jones' lot. The claimed right to injunctive relief is rested upon a building restriction covenant contained in a deed executed by one

Peterson to Jones while Peterson and one Christianson were the owners each of an undivided one-half interest in Berg's lot; and also upon the claimed authorization and ratification by Christianson of the making of the building restriction covenant by Peterson. Trial of the cause upon the merits in the superior court resulted in judgment granting to Jones the injunctive relief prayed for, from which Berg has appealed to this court.

The land with which we are here concerned lies in lots 5 and 6 of Kilbourne's supplemental plat of Lake Union addition to the city of Seattle. The side lines of these lots run east and west, while the end lines run north and south; they are of equal size, each being sixty feet wide. The south line of lot 5 is also the north line of lot 6. Jones owns the south twelve feet of lot 5 and the north 24 feet of lot 6, making his tract 36 feet wide, which we shall, for convenience, call the Jones lot. Berg owns, subject to the building restriction covenant as claimed by Jones, the south 36 feet of lot 6, which we shall, for convenience, call the Berg lot. This will serve to distinguish their respective tracts from the lots as numbered upon the Kilbourne official plat. On June 24, 1916, Peterson was the owner of the Jones lot. Peterson and Christianson were then the owners, each of an undivided one-half, of the Berg lot. On that day Peterson executed and delivered to Jones a warranty deed in compliance with their previous contract of sale, which deed, omitting signatures and acknowledgment, reads as follows:

"The grantor, James Peterson, for and in consideration of ten ($10) dollars in hand paid, conveys and warrants to J. Percival Jones, the grantee, the following described real estate:

"The south twelve (12) feet of lot five (5) and the north twenty-four (24) feet of lot six (6), both in block

fifty-six (56) of Kilbourne's Supplemental Plat of that part of Lake Union Addition to the city of Seattle, situated in lot four (4), section seventeen (17), tp. twenty-five (25) N. R. 4 E. Subject only to the lien of two mortgages, one for fourteen hundred dollars, the other for seven hundred and fifty dollars, both due August 1st, 1918. The interest on both to be paid to date by grantor.

"The party of the first part covenants that neither he, his heirs or assigns will build any building upon the lot or property adjoining the above property on the south which shall be closer than eight feet to the south line of the property hereby conveyed, so that there shall be sixteen feet between any building which may be built on the property to the south and the building on the property hereby conveyed, and covenants that this covenant shall be a covenant running with the land and binding on any and all grantees as well as the heirs and assigns of the grantor herein. The property hereby conveyed is situated in the county of King, state of Washington."

This deed was filed for record in the office of the auditor of King county on June 27, 1916, and indexed as follows:

"Date of reception, June 27th, 1916; grantor is James Peterson; grantee, J. Percival Jones; volume 946 of Deed, page 387; part of Lots 5 and 6, Block 56, Kilbourne's Supplemental Lake Union."

On April 7, 1917, Peterson and Christianson executed and delivered to a Mrs. Brace a quitclaim deed for the Berg lot. This quitclaim deed was given in satisfaction of a mortgage held by Mrs. Brace against the Berg lot, executed before the execution of the deed from Peterson to Jones. This quitclaim deed did not, however, upon its face indicate that such was its purpose. It was duly filed for record in the office of the auditor of King county on April 13, 1917. On May 31, 1917, Mrs. Brace and her husband executed and deliv-

ered to Berg a warranty deed for the Berg lot. It was duly filed for record in the office of the auditor of King county on June 26, 1917. This deed contained no building restriction covenant. Other facts will be noticed touching the question of authorization and ratification by Christianson of the making of the building restriction covenant by Peterson in his deed to Jones, when we come to the consideration of the question of Christianson, Mrs. Brace, and Berg being bound by such authorization and ratification.

It is first contended in behalf of appellant Berg that he is, in no event, bound by the building restriction covenant contained in the deed from Peterson to Jones, since he had no actual or constructive notice thereof. It may be conceded that he had no notice of that covenant other than such as would be imparted to him by the recording and indexing of the deed in which it was contained. It is conceded that the deed was duly recorded in the office of the auditor of King county soon after its execution, but it is argued that such recording imparted no notice to Berg as a subsequent purchaser of the Berg lot, because it was not properly indexed. Our recording statutes prescribe the manner of keeping indices as follows:

"Every auditor must keep a general index, direct and inverted. The direct index shall be divided into seven columns, and with heads to the respective columns, as follows: Time of reception, grantor, grantee, nature of instrument, volume and page where recorded, remarks, description of property. He shall correctly enter in such index every instrument concerning or affecting real estate which by law is required to be recorded, the names of grantors being in alphabetical order. The inverted index shall also be divided into seven columns, precisely similar, except that 'grantee' shall occupy the second column and 'grantor' the third, the name of grantees being (in)

alphabetical order. For the purpose of this act, the term 'grantor' shall be construed to mean any person conveying or encumbering the title to any property, . . ." Rem. Code, § 8787.

It is argued that the property is not properly described in the index so as to impart notice, especially as to the portion of the Berg lot to which the building restriction covenant applies. We have seen that the index refers to the property as "part of lots 5 and 6, Block 56, Kilbourne's Supplemental Lake Union." This description, it may be conceded, is not such a description of property as would be required in a deed to real property; but that it points to the record of the deed wherein Peterson assumes to convey and encumber land within the boundaries of lots 5 and 6, and also plainly points to the book and page of the recording of the whole of the deed in which the conveyed and incumbered property is described with certainty, we think is quite plain. Counsel for Berg invoke the general rule that the indexing of a recorded instrument, when required by statute, is as necessary to the imparting of notice to subsequent purchasers as is the recording of the instrument by copying it in full in the proper record book, citing *Ritchie v. Griffiths,* 1 Wash. 429, 25 Pac. 431, 22 Am. St. 155, 12 L. R. A. 384, so holding, wherein the subject is exhaustively reviewed, but in which case there was involved a recorded deed which was not indexed in any manner. In *Malbon v. Grow,* 15 Wash. 301, 46 Pac. 330, there was involved the indexing of a recorded mortgage. The description column of the index was ruled into four columns, the first headed, "Description;" the second headed, "Sec. Lot;" the third headed, "Twp. Block;" the fourth headed, "R". In the column headed "Description," was inserted the word "Land"; in the column headed "Sec. Lot", was inserted the number

"35"; in the column headed "Twp. Block", there was inserted the number "7"; in the column headed "R", there was inserted the number "36". Disposing of the contention that this indexing of the recorded mortgage was insufficient to put a subsequent purchaser of the property upon notice of its contents, Judge Dunbar, speaking for the court, said:

"It is true that this description is not technically correct. There is really nothing to indicate whether the figures '35' refer to section or lot, or whether the figure '7' refers to township or block; it might refer to either. But if one desired to purchase lot 35 in block 7, he would find the description of that lot and block in this index; or if he desired to purchase section 35 in township 7, he would also find the description in this index sufficient to cause a reasonable man to examine the record and ascertain whether the figures in the index referred to a lot or a section, a township or block . . . . we think that the index in this case furnished information, or at least a suggestion, of the fact of the record of the mortgage, which the appellant could not ignore without the grossest kind of negligence. If it should be construed to be township and section, then the index of the sale of the whole section 35, in township 7, must be construed to give notice of the same or any portion of such section or township, under the rule that the greater includes the less . . . . here we have not only the names of the grantor and the grantee and the book in which the instrument is recorded, but we also have a description, though imperfect, of the land itself, sufficient to challenge the attention of the searcher of the record, and one who purchases after such challenge is not an innocent incumbrancer or purchaser without notice."

This view of the law finds ample support in the authorities. See 39 Cyc. 1739-1740, and authorities there cited. In the text of Cyc. it is there said:

"When an imperfect or inaccurate index is of such a character as should lead a prudent person to ex-

amine the record, he is affected with notice of what the record would have imparted.''

It is also contended, touching this branch of the case, that the recording of the deed from Peterson to Jones, conveying the Jones lot and containing the building restriction covenant incumbering the Berg lot, was not notice to subsequent purchasers of the Berg lot, because that deed was not within the chain of title to the Berg lot. Counsel invoke the general rule recognized in *Attebery v. O'Neil,* 42 Wash. 487, 85 Pac. 270, and *Burr v. Dyer,* 60 Wash. 603, 111 Pac. 866, that recorded instruments which are outside the chain of title are not required to be noticed by purchasers. The trouble with this argument, as it seems to us, is that the deed from Peterson to Jones, in so far as it purports to incumber the Berg lot with the building restriction covenant, is not outside the chain of title to that lot. That deed purports to convey an easement interest to Jones in the Berg lot by Peterson, who then had an interest therein evidenced by prior instruments which are within the chain of title to that lot. The mere fact that the interest so conveyed may be less than the whole fee title to the portion of the Berg lot so incumbered, and may be only a portion of the interest of one co-owner, does not argue that the deed in which such covenant is found is outside the chain of title to that lot. In the *Attebery* case the mortgage in question was held to be outside the chain of title, in so far as it purported to mortgage the interest of one of the persons who executed the mortgage, because there was nothing in the chain of title showing that such person had any interest in the property. In the *Burr* case, the rule was recognized in general terms, yet that decision also lends support to the view of the law we here express. We think it

safe to say, speaking in general terms, that any instrument purporting to incumber or convey an interest in a sufficiently described tract of land, executed by a person having an interest therein as disclosed by other prior instruments within the chain of title, is within the chain of title. In this case, it is plain that Peterson with Christianson held title to the whole of the Berg lot, evidenced by prior conveyances within the chain of title to that lot.

It is further contended, touching this branch of the case, that a prospective purchaser of the Berg lot was not bound to look beyond the description of the Jones lot found in the deed from Peterson to Jones. We cannot adopt this view. The language of the deed as plainly and certainly describes the portion of the Berg lot purported to be incumbered by the building restriction covenant therein as it does the Jones lot which it purports to convey in fee; and since the portion of the Berg lot which that deed purports to incumber, to wit, the north eight feet, lies within lot 6, plainly the indices point to that portion of Berg's lot, as well as to that portion of lots 5 and 6 occupied by the Jones lot. The building restriction covenant in the deed from Peterson to Jones, in effect purported to grant to Jones an easement interest in the north eight feet of the Berg lot, as plainly as that deed purports to convey the Jones lot in fee. In 9 R. C. L. 735, the learned editors observe:

"An easement has been defined as a liberty, privilege or advantage in land without profit, existing distinct from the ownership of the soil. It is a right which one person has to use the land of another for a specific purpose. As more fully defined it is a privilege without profit, which the owner of one tenement has a right to enjoy in respect to that tenement, in or over the tenement of another person, by reason where-

of the latter is obliged to suffer or refrain from doing
something on his own tenement for the advantage of
the former, a charge or burden upon one estate (the
servient) for the benefit of another (the dominant)."

Plainly the language of the building restriction cov-
enant grants to Jones, as the owner of the Jones lot, a
"privilege or advantage" in the north eight feet of
the Berg lot, and makes that privilege a covenant
running with the land, and this we understand to mean
all the land so conveyed and incumbered. We are of
the opinion that the recording of the deed from Peter-
son to Jones and the indexing thereof, as above no-
ticed, was as effective notice of the building restric-
tion covenant purporting to incumber the Berg lot as
it was notice of the conveyance of the Jones lot.

How effectual the building restriction covenant in
the deed from Peterson to Jones purporting to incum-
ber the Berg lot became, as against Christianson, Mrs.
Brace, and Berg, we now proceed to inquire. Peter-
son testified that, before he gave to Jones the deed con-
taining the building restriction covenant, he and
Christianson had agreed orally between themselves
that no building should be constructed upon either his
lot, now the Jones lot, or the lot to the south, which
they owned together, now the Berg lot, within eight
feet of the line between the two lots, so that there
would be at least sixteen feet of an open space be-
tween the buildings to be constructed upon the re-
spective lots. That there was then such an agreement
and understanding between Peterson and Christian-
son, and that such agreement was thereafter fully con-
firmed and acted upon by both, we think is abundantly
shown by the evidence. We have seen that the lan-
guage of the building restriction covenant not only
grants an easement right in the Berg lot, but it im-
plies that a like easement right is reserved in the

Jones lot for the benefit of the owners of the Berg lot. This is a circumstance of at least some weight, especially as touching the question of notice to subsequent purchasers of the Berg lot. On June 14, 1916, which, it will be noticed, was ten days before the execution of the deed from Peterson to Jones containing the building restriction covenant, Peterson and Christianson, contemplating a sale of the Berg lot to one Anderson, signed and acknowledged a warranty deed purporting to convey the Berg lot, but at Anderson's instance left the space in the deed for the grantee's name blank. That deed contained in its warranty clause the following: "That the same (premises) are free from all liens and incumbrances except one mortgage of seven hundred fifty, also no building to be built within 8 ft. of the north line." This was written into the deed by express consent and with the positive knowledge of Christianson. That contemplated sale was not consummated, and, by consent of all parties, the signatures to the deed were torn off. The body of the deed, however, was not destroyed and is in evidence in this case, not as evidence of a conveyance of the title, but as tending to show that Peterson and Christianson had an understanding and agreement as to the building restriction, such as testified to by Peterson, and thereafter embodied in the building restriction covenant in his deed to Jones.

Soon after the execution of the deed from Peterson to Jones, Peterson informed Christianson of the execution of that deed and the building restriction covenant embodied therein, incumbering the lot owned by them in common, now the Berg lot. Christianson never made any objection thereto. It is also worthy of note that Christianson knew, at the time of the signing of the Anderson deed, that Peterson had theretofore made a contract for the sale of the Jones

lot to Jones, with the same building restriction cov-
enant therein, purporting to incumber the Berg lot, as
was thereafter embodied in the deed from Peterson
to Jones, executed in pursuance of that contract,
which contract we also note was duly recorded and
indexed, as was the deed executed in pursuance there-
of. We have seen that, some ten months after the
execution of the deed from Peterson to Jones contain-
ing the building restriction covenant, Peterson and
Christianson, on April 7, 1917, executed and delivered
to Mrs. Brace a quitclaim deed for the Berg lot. While
that deed seems to have been given in satisfaction of
the $750 mortgage, it does not so show upon its face.
We may say that the record strongly suggests to our
minds that that deed was made in quitclaim form also
because of the building restriction covenant in the
deed from Peterson to Jones purporting to incumber
the Berg lot. It also seems to us that such reason
for its being in that form would also be suggested by
its record to all subsequent purchasers of the Berg
lot. Thereafter, on March 31, 1917, as we have seen,
Mrs. Brace and her husband conveyed by warranty
deed to Berg the Berg lot.

Invoking the general rule recognized in *Rowe v.
James,* 71 Wash. 267, 128 Pac. 539, that one of two
cotenants cannot, by any unauthorized acts, estop the
other so as to impair the other's interest or title in
the common property, counsel for appellant Berg
contend that the building restriction covenant in the
deed from Peterson to Jones was wholly ineffectual
to incumber the Berg lot, either upon the theory of
prior authorization or subsequent ratification on the
part of Christianson. There was a time when the
authorities seemed to support the view that a convey-
ance by one cotenant alone of any portion of land or

interest therein, held by him in common with another, especially if the cotenancy was a joint tenancy, as at common law, was wholly void and ineffectual to transfer even the interest of such cotenant. We think it plain, however, that such is not the law according to present-day authority. In Freeman, Cotenancy and Partition (2d ed.) § 204, it is said:

"We are not sure that the difference in the decisions of many of the courts upon this subject has not been more in form of expression than in matters of substance. If, however, there remain any states wherein the courts really intend to assert that a conveyance by one cotenant of part of the common property is void, in any other sense than that such conveyance will not operate to diminish or impair the rights of the non-assenting cotenants, such courts are falling into the minority, as the more recent decisions tend strongly and surely toward the recognition of such conveyance as a valid transfer of all the grantor's interest in the property therein described, entitling the grantor to certain rights that the cotenants of the grantor cannot wantonly disregard."

This was said by the learned author in 1886, and we think that the decisions of the courts rendered since then fully justifies his statement then made. We do not understand that counsel for Berg make any serious contention against this view of the law. We proceed, therefore, having in mind that the building restriction covenant made by Peterson in his deed to Jones purporting to incumber the Berg lot, the common property of him and Christianson, may have been authorized or ratified by Christianson so as to make it fully effectual as against both.

In *Eaton v. Tallmadge*, 24 Wis. 217, 223, Justice Paine, speaking for the court, said:

"Where there are two tenants in common, each owning an undivided half of land, neither can make a par-

tition that will be binding upon the other, by assuming to convey either half specifically. But if one does so convey, we think the other would be at liberty to acquiesce, and to accept the remaining half. And if he should do so, by conveying that specifically, the two conveyances would operate as a complete and binding partition.''

This, it seems to us, is the principle upon which this case must be decided. It is true that this is not a case where one of the cotenants has assumed to convey the entire title to a specific one-half of the entire property, his cotenant conveying the other half; but it is a case where one cotenant, to wit, Peterson, has conveyed an easement interest in a specific portion of the common property, which easement affects less than one-half of it, and where the two cotenants joining in one conveyance have, by quitclaim deed, conveyed all their remaining interest in the whole of the common property. This, it seems to us, in the light of the facts shown by this record, was a confirmation on the part of Christianson of his previous oral agreement with Peterson, and of the act of Peterson in assuming to grant an easement incumbering the Berg lot by the building restriction covenant in his deed to Jones. This quitclaim deed avoided all necessity of formal partition of the Berg lot between them, and was as much a recognition by Christianson of Peterson's power to so incumber the Berg lot as if he had conveyed absolutely the north half of the Berg lot and Christianson had conveyed the south half.

In *Cook v. International & G. N. R. Co.,* 3 Tex. Civ. App. 125, 22 S. W. 1012, it was said:

''While it has been held that the deed of a tenant in common for a portion of the land by metes and bounds is void, the recognized doctrine in this state is that such a deed will convey an equity which the

grantee has a right to assert in a suit for partition, and to have the land conveyed and set apart to him in the partition, if it can be done without prejudice to the other tenants in common. Plaintiffs in this case, after the sale by their cotenants to the defendant, proceeded to partition the remainder of the land among themselves. The partition was exclusive of the land conveyed to the defendant, and they did not make it a party to such partition, but in fact cut themselves off from the power to have any other partition with the defendant, such as would recognize its right to have the land in controversy set apart to it. Such proceedings were equivalent to a recognition of the right of the defendant to have the land set apart to it, because all of the rest of the land was appropriated by plaintiffs, and the defendant could not have a proportional part of the land set apart to it elsewhere in the tract if it should appear inequitable for it to retain the identical tract conveyed to it by plaintiffs' cotenants. Rev. St. art. 3490; *March v. Huyter,* 50 Tex. 251; *Peak v. Swindle,* 68 Tex. 252, 4 S. W. Rep. 478; Freem. Coten. §§ 199-204. When the equitable right of the vendee of a cotenant to have the land conveyed to him by metes and bounds set apart to him, if it can be done without prejudice to the interests of the other cotenants, is once recognized, there can be no reason why the same principle should not apply to a less interest than the entire interest of the cotenant."

This was said in a case where there was involved a conveyance by one cotenant of less than his entire interest in the common property.

In *Currens v. Lauderdale,* 118 Tenn. 496, 101 S. W. 431, there is quoted with approval from 17 Am. & Eng. Ency. Law (2d ed.), p. 684, the following:

"While it is well settled that one tenant in common cannot convey a specific part of the common property by metes and bounds to the prejudice of his cotenant, it does not necessarily follow that all such conveyances are wholly void. The true doctrine, as deduced

from actual decisions, seems to be that such convey-
ances are absolutely void as against cotenants whose
rights are prejudiced thereby and who have not con-
sented to them or ratified them, but that, when con-
firmed or assented to by the other cotenants, such
conveyances are valid as against all parties. The as-
sent of the cotenant in such cases need not necessarily
be by deed, but may be inferred from long acquies-
cence in the grantee's title. In any case it seems
that a tenant cannot complain of a conveyance of a
specific part of the common estate by a cotenant, where
his own rights are not injuriously affected thereby;
and a court of equity will respect the rights of the
tenants, so far as this can be done consistently with
the rights of the other cotenants, and, wherever prac-
ticable, will confirm the title of the grantee by allotting
to the grantor that portion of the land conveyed.''

In *Pellow v. Arctic Iron Co.,* 164 Mich. 87, 128 N. W.
918, Ann. Cas. 1912B 827, 47 L. R. A. (N. S.) 573,
Justice Brooke, speaking for the court, upon a situa-
tion involving the ratification by one cotenant of the
deed of another, purporting to convey a part of the
common property, observed:

''We have seen that the non-granting cotenant may
not disregard the deed of his granting cotenant and
treat it as a nullity. While such deed cannot be per-
mitted to operate to his prejudice, nevertheless it im-
poses upon him an obligation to do no act which would
impair the equities created by his cotenant by the
execution of the deed. If dissatisfied with the act of
his cotenant, he can at once commence proceedings in
partition, making the individual grantees of his co-
tenant parties thereto. In such proceeding, his rights
will be fully protected and the rights of the individual
grantees will not suffer, if they can be preserved with-
out injury to the interest of the non-granting cotenant.
This right of the nongranting cotenant is clear, while
the right of the grantee of a specific parcel to demand
partition of the entire estate is, at least, doubtful .
. . . The non-granting cotenant may, of course,

give formal assent to the unwarranted act of his granting cotenant, in which event the individual grantees take exactly what the deed purports to convey. Or he may, by a course of dealing with the balance of the common estate, in which he totally disregards the equitable rights created by his cotenant's deed, be held to have so acted in recognition and ratification thereof. This ratification, if clearly made out, would and ought to have the same effect as a formal assent."

See, also, 7 R. C. L. 883; *Worthington v. Staunton,* 16 W. Va. 208; *Burr v. Dyer,* 60 Wash. 603, 111 Pac. 866.

It is true that this is not a partition suit, but the principle which would induce a court in a partition suit to award to Peterson's grantee, Jones, the easement right in the north eight feet of the Berg lot is, we think, all sufficient to protect such easement right in Jones upon the theory of Christianson's authorization and confirmation of such grant by Peterson.

Is Berg, who received his title from Mrs. Brace by warranty deed from her purporting to convey the whole of the Berg lot free from incumbrance, bound by the building restriction covenant in the deed from Peterson to Jones purporting to incumber that lot? We think he is. He had record notice of that building restriction covenant purporting to incumber the Berg lot, in the contract wherein Peterson agreed to sell the Jones lot to Jones, and also in the deed executed and delivered by Peterson to Jones pursuant to that contract. He had record notice of the fact that Jones was one of two cotenants owning the Berg lot. He had record notice of the conveyance, by quitclaim deed only, of all of the remaining interest of Peterson and Christianson in the Berg lot to Mrs. Brace, suggestive of the refraining of Christianson, as well as Peterson, warranting the title to the Berg lot because of the

building restriction covenant in the deed from Peterson to Jones purporting to incumber that lot, as well as because of the $750 mortgage on that lot. The law, as settled by present day authority, told him that the building restriction covenant was not void, and that it could or might be rendered effective against Christianson, as it already was against Peterson, by acts on their part amounting to, or taking the place of, partition of the Berg lot between them, or even by a decree of court in a partition suit.

Some contention is made that, since the quitclaim deed from Peterson and Christianson to Mrs. Brace was given in satisfaction of the $750 mortgage held by her, which mortgage lien was superior to the easement right created by the building restriction covenant, equitable considerations now dictate that the quitclaim deed should also be considered as vesting in her a title freed from the incumbrance created by the building restriction covenant. The trouble with this argument, as we view it, is that the mortgage did not give Mrs. Brace any title whatever in the Berg lot, but was a mere lien thereon to secure the $750 mortgage debt owing to her. If she chose to take a quitclaim deed from the owners thereof, conveying to her all their remaining interest in the Berg lot in payment of the debt secured by her mortgage, it seems plain to us that she got no better title than they then possessed, which, as we have seen, was subject to the easement right created by the building restriction covenant. The fact that she might have foreclosed her mortgage, and upon sale thereunder of the Berg lot the purchaser would have gotten title thereto freed from the incumbrance of the building restriction covenant, assuming that it would have been necessary to sell all of the lot, including the north eight feet thereof, in

order to raise sufficient funds to pay the mortgage debt, we think does not argue at all that she acquired any greater interest in the Berg lot by the quitclaim deed than was then possessed by Peterson and. Christianson. The fact remains that she did not seek to foreclose her mortgage to the end that perfect title might be vested in her, or someone else who might become the purchaser thereof at a foreclosure sale, but she merely elected to take such title as they possessed in satisfaction of the mortgage debt.

We may here observe that the wives of both Jones and Berg were joined with each of them, respectively, as parties to this action. We have spoken of Jones and Berg as though they were the only parties to the action, merely for convenience of expression. Of course, all we have said applies to their wives as well as to them. We conclude that respondent Jones and wife are entitled to injunctive relief securing to them enjoyment of the easement right granted by the terms of the building restriction covenant in the deed from Peterson, as awarded by the trial court.

The judgment is therefore affirmed.

HOLCOMB, MOUNT, and FULLERTON, JJ., concur.