## THOMAS McKEY'S HEIRS v. JOHN WELCH'S EX'X.

One joint-tenant, or tenant in common, cannot convey a specific part of the estate, so as to bind or prejudice his co-tenant; yet such conveyance may bind the vendor, by way of estoppel.

It is not competent for the court to render a decree, in favor of a party, if, in the pleadings, there be no basis or prayer for such relief; and consequently, where the plaintiff brought an action of trespass to try title, to which the defendant pleaded not guilty, and it was found by the jury, upon the issue presented by the charge of the court, that the defendant had purchased the land claimed by him from a co-tenant, (who had purchased a part of the interest to which one of the plaintiffs was entitled,) the court erred in decreeing to the defendant the amount of land claimed by him, to be taken out of the portion which the plaintiff, through whom he claimed, should receive upon the partition of the entire tract among the plaintiffs.

APPEAL from Hill. Tried below before the Hon. John Gregg.

This was an action of trespass to try title, brought in the court below by the appellants, heirs of Thomas McKey, deceased, against John Welch, to recover two labors of land, being a part of the colony headright of said Thomas McKey, deceased. The facts, as shown by the record, were, that Thomas McKey, in September, 1835, obtained from the government a title for a league of land, lying on the Brazos river, and shortly after died, leaving Sally McKey, his widow, and the other plaintiffs, his children and heirs at law. During the pendency of the suit, Welch died, leaving Jedida, his widow, executrix, who was made a party to the suit.

The defendant pleaded "not guilty," suggested settlement in good faith, and claimed compensation for improvements, &c. Defendant also pleaded, specially, that in August, 1837, after the death of Thomas McKey, Sally McKey, his widow, sold and conveyed to one Massillon Farley, two labors of land, part and parcel of the headright of said Thomas McKey, to be selected by said Farley on any part of the league, provided such location should be upon one of the bound-

ary lines of said league; that afterwards, in the year 1845, Farley made a selection, and located the said two labors in the corner of the league, having the northern line of the league for one boundary, and the Brazos river as the western boundary; and that in March, 1852, Welch purchased the said two labors of land of Massillon Farley, and took possession of the same.

The title to the league from government to Thomas McKey, the conveyance from Sally McKey to Farley, the selection and location of the two labors by Farley, and the conveyance by Farley to Welch, were all given in evidence to the jury, and the heirship of plaintiffs was also proven. There was testimony showing that a portion of the purchase money, from Farley to Mrs. McKey, was unpaid; and also other testimony, in relation to the amount and value of improvements made by Welch; and also whether Welch made the improvements, with or without the consent of plaintiffs.

The court charged the jury, "that the title paper offered in "evidence, by plaintiffs, establishes the fact, that the land in con- "troversy was granted to Thomas McKey; and his death being "established, his wife and children (the plaintiffs) succeeded him "in the title; and by the action of the law, Mrs. Sally McKey, "at the death of Thomas McKey, became the owner of one undi- "vided half of said league of land, and the children of said "Thomas McKey, deceased, became the owners of the other un- "divided half. If, then, Sally McKey, the widow, made the con- "veyance to Massillon Farley, and the said Farley conveyed to "John Welch, the jury would find such fact specially, and make a "computation of whatever purchase money remained due. If they "believe, from the testimony, that any sum is still due, on the "contract between said Sally McKey and Farley, the jury will "allow interest at five per cent, from the maturity of the note, "up to the 16th March, 1840, and after that time, allowing "interest at the rate of eight per cent. The jury will also "state, in their verdict, how much money has been paid by "Farley. If the jury believe, from the testimony, that John "Welch made improvements upon the land in controversy, they

"will find whether he made them by the consent of the plaintiffs "or not. If he made them by their consent, they will so state "in their verdict, and find the value of such improvements. If "the jury believe, from the testimony, that the improvements "were made against the wish, or without the consent of the "plaintiffs, they will so state in their verdict. If the jury be- "lieve, from the testimony, that Sally McKey conveyed to M. "Farley, and Farley conveyed to John Welch, they well state "in their verdict, how much of the land was so conveyed. If "the jury do not believe that Sally McKey ever conveyed to "Farley, they will find for the plaintiff, and say so, without "stating any other fact. The jury are required to pass upon "all the facts mentioned in the foregoing charge, so as to show "the entire history of the case, as shown by the testimony; but "they need not pass upon any fact, to which their attention is "not called in the charge."

The plaintiff asked the court to charge the jury, "that if the "jury believe, from the testimony, that Sally McKey sold the "land to Farley, after the death of Thomas McKey, and before "a partition among the heirs, they would find for the plaintiffs." This charge was refused by the court.

The jury returned the following verdict: "we the jury find that "Sally McKey made a conveyance of two labors of land, out of "the headright of Thomas McKey, to Massillon Farley; and that "Massilon Farley conveyed said land to John Welch; and that "there is yet unpaid, on purchase money, forty seven $\frac{25}{100}$ dol- "lars, and interest on same, up to this date, $70 25; and that "John Welch made the improvement contrary to the wish of "the heirs of McKey; and that Thomas McKey was dead at "the time the deed was made by Sally McKey to Massillon "Farley."

Upon this verdict, the court rendered judgment in favor of plaintiffs, for the sum of $117 50; which, being tendered by defendant, and refused by plaintiff, was ordered to be deposited with the clerk, subject to the order of the court. The decree then proceeded: "it is further ordered, adjudged, and decreed

"by the court, that the defendant have and recover of Sally "McKey, and the heirs of Thomas McKey, two labors of land, "to be selected from the half of the headright league of land "granted to Thomas McKey, and inherited by said Sally "McKey from Thomas McKey, deceased, that may hereafter "be partitioned between the widow and children of Thomas "McKey; and that said two labors of land be taken from one "of the boundary lines of said Sally McKey's half of said "league." The decree adjudged that each party pay the costs occasioned by them respectively, and that the decree be certified to the Probate Court.

From this decree, the plaintiffs below took an appeal to this court, and assigned for error,—1st. The court below erred in its charge to the jury, as to the payment of the purchase money due from Farley to Sally McKey. 2d. In compelling plaintiffs to receive the purchase money, found by the jury, and decreeing the two labors of land to defendant.

*Winkler*, for appellants. The view we have taken of the case, is, that the last amended answer of the defendant, is in effect the institution of a cross-action, having for its object the enforcement of the contract between Farley and Sally McKey; and that the case would be governed by similar rules, to those applying in suits for specific performance. If we are correct in this, the appellee ought not to recover on the amended plea, either upon the facts, or the law of the case, because—

1st. This is a stale transaction, of more than twenty years' standing, and therefore ought not to be enforced; and although the instrument from Sally McKey purports, upon its face, to be an absolute conveyance, yet the production of the note, given by Farley, and the deposition of the witness, McLennan, rebuts this, and shows a sale incomplete, and dependent upon the further action of the parties, to render it valid. According to the civil law, then in force, "the parties do not "intend the contract shall subsist, unless each of them performs "his engagement." (1 Domat's Civ. Law, p. 247, § 13.) It

will hardly be contended that the two instruments, the deed and the note, between the same parties, of even date, do not constitute the transaction.

2d. Sally McKey, the grantor of Farley, had no power to convey any particular part of the estate of Thomas McKey, without the concurrence of the other joint owners of the estate; for, although one of several joint owners could sell his undivided interest, he not only could not sell a particular portion, but he could not make any material change in the common estate, without the concurrence of the other joint owners, either expressed or implied. (1 Domat's Civ. Law, p. 585, § 6.) And, for obvious reasons, each one of the joint owners or tenants in common, was entitled to an equal division; which right would be thwarted entirely, by allowing any one, without the concurrence of the others, to sell a particular portion of the common estate. It seems, however, to have been conceded by the court below, that the pretended conveyance was not sufficient to pass the title to the particular land conveyed, but that it would pass title to an undivided interest of so much of Sally McKey's share of the estate; and that Welch, by virtue thereof, would be entitled to take the place of Sally McKey, in a subsequent partition of the land, *pro tanto*, and become a tenant in common, with the widow and children of Thomas McKey, in the league of land in question. In reference to this view of the subject, we say—1st. That to allow this, would be to allow one of the joint owners to make a material change in the situation of the property: 2d. The deed does not purport to convey an undivided interest: 3d. The amended answer, the *cross-bill* of the defendant, does not pray for an undivided interest, but for a particular portion, any of which is without authority of law, so far as we have been able to find: 4th. If Welch could be subrogated to the rights of Sally McKey, he could not then maintain his action for a particular portion of the common estate, but must sue for partition. (Compton v. Matthews, 3 La. Rep. 136.)

3d. The pleadings are not sufficient to warrant the decree

rendered in the court below.   A decree, for an undivided inte-
rest, is not asked for; the prayer is, for the particular tract of
land; and there is not even a prayer for general relief.   The
prayer must ask for the relief granted.

4th.  The deed to Farley purports to convey lands belonging
to the estate of Thomas McKey, without any pretence of autho-
rity by will, order of court, or otherwise, so to convey, and car-
ries on its face its own condemnation.

5th.  If there be any doubt that Welch had full knowledge of
the condition of the title, at the time of his purchase from Farley,
that doubt will be removed by the evidence ; and if it should ap-
pear that Welch, notwithstanding his defective title, has equities
which ought to be protected, such as improvements upon the land,
we say, the proof shows, and the verdict of the jury finds, that
the improvements were made against the will and consent of
the appellants.   They did not stand still and see their pro-
perty improved, without letting their rights be known; and they
speedily attempted to enforce them by the institution of this
suit.

Upon these views, we ask the court to reverse the decree ren-
dered in the court below, and render here a decree in favor of
the appellants for the land sued for.

*Barziza* and *Gould* for appellee.   The appellee respectfully
suggests, that there is no error of which the appellants have
any right to complain.   The suit was one of trespass to try
title ; the proof, and the verdict, show that the defendant was
joint owner, or tenant in common, with the plaintiffs, of the land
sued for ; and it is believed to be too well settled to require
authority, that in such case the action must fail.   That the
defendant tendered a balance of the purchase money to the
plaintiffs, should certainly be to them a matter of rejoicing,
rather than of complaint.   The right of defendant, to an undi-
vided interest in the league, to the extent of two labors, is clear ;
and it is believed that, if any one has a right to complain, it is

the appellee, who might well have claimed his costs in the court below.

WHEELER, CH. J. It appears to be well settled, and upon good reasons, that one joint tenant, or tenant in common, cannot convey a distinct portion of the estate, by metes and bounds, so as to prejudice his co-tenant; for, to give effect to such alienations, as against the co-tenants of the grantor, would be to create new tenancies in common, in distinct tracts or parcels of the estate, held in common, to the injury of the co-tenants. As one tenant in common has no right, on partition, to select any particular portion of the land, and insist on having his part set off in that specific portion, so he cannot convey such a right to his grantee. (Bartlet v. Harlow, 12 Mass. Rep. 348, 353, 354; Porter v. Hill, 9 Id. 34; Blossom v. Brightman, 21 Pick. Rep. 284; Jewett v. Stockton, 3 Yerg. Rep. 492.) "One joint "tenant, or tenant in common, (says Kent,) cannot convey a "distinct portion of the estate by metes and bounds, so as to "prejudice his co-tenants, or their assignees, even though it may "bind him by way of estoppel. As against the co-tenants, such "a deed is inoperative and void." (4 Kent's Com. 368.) The same rule, it seems, obtains in the civil law. (1 Domat's Civ. Law, part 1, book 2, tit. 5, § 2, art. 6.)

The purport of the deed, under which the defendant claimed, was to give a right to select and hold, in severalty, a distinct portion of the common property, by metes and bounds. It was ineffectual and inoperative, to give such a right, as against the co-tenants of the grantor. But still, it seems, it would be valid and effectual to bind the grantor herself, by way of estoppel. (Bartlet v. Harlow, 12 Mass. Rep. 354; Varnum v. Abbott, Ibid. 474; Rising v. Stannard, 17 Ibid. 282.) It may have been in this view, that the court proceeded to decree to the defendant, a right to select the two labors out of the purpart of his grantor, after it should be set apart to her. This might have been correct, if the pleadings had been so framed as to admit of such a decree; but they were not. The defendant did

not frame his answer with any such view, or with a view to any equitable relief, to which he may have been entitled, as against his grantor. It, therefore, was not competent to render a decree in his favor, which he had not asked, and for which there was no basis laid in the pleadings. And hence, it does not become necessary to decide, whether such a decree might legally have been rendered, if prayed for specifically, or under a prayer for general relief. Nor is it necessary to inquire, whether the defendant might have called on the court to decree a partition of the estate, in order that his interest might be set apart to him, out of the portion allotted to his grantor; as the defendant has not sought such relief, or asked the aid of the court, to move his grantor to partition the estate between herself and her cotenants, in order to effectuate his right as against her. The only judgment which could legally be rendered upon the verdict, was a judgment for the plaintiffs, with costs. The judgment must therefore be reversed, and such judgment be here rendered.

Reversed and reformed.