**FUNK et al. v. WALKER et al.** (No. 6759.)

(Court of Civil Appeals of Texas. San Antonio. May 17, 1922.)

1. **Appeal and error** ⊕=931(2)—**Presumption in favor of finding on disputed testimony does not attach to conclusion of law from undisputed evidence.**

The presumption in favor of a finding of fact upon disputed testimony does not attach to a conclusion of law drawn from undisputed evidence.

2. **Venue** ⊕=28—**The terms "inhabitant," "resident," "domicile," and "residence" are interchangeable terms in the venue statute, and one may maintain a residence in two different counties.**

Rev. St. art. 1830, provides that no person who is an inhabitant of the state shall be sued out of the county of his domicile, and section 4 thereof provides that "where there are two or more defendants residing in different counties, in which case the suit may be brought in any county where one of the defendants resides," and a defendant may maintain a residence in two different counties, and the words "inhabitant," "resident," "domicile," and "residence" are interchangeable terms as used in the statute; so that, where an inhabitant has established two places of abode in different counties, and uses them indiscriminately as places of residence according to his pleasure or convenience, each constitutes his residence within the meaning of the venue statute, and he may be sued in either.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Domicile; Inhabitancy—Inhabitant; Residence; Resident.]

3. **Pleading** ⊕=111—**Defendant's evidence established that he was resident of the county in which he was sued, and it was error to sustain plea of privilege.**

Defendant's evidence *held* to establish as a matter of law that at the time of the filing of suit he was a resident of Tarrant county within the meaning of the venue statute, and was *properly* sued therein, *so that plea of* privilege was erroneously sustained.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit by R. E. Funk and others against B. S. Walker and others, in which a change of venue from Tarrant County to Stephens County was granted, and the plaintiffs appeal. Reversed and remanded, with instructions.

Phillips, Trammell & Caldwell, of Fort Worth, for appellants.

Wilson & Allred and McCartney, Foster & McGee, all of Breckenridge, for appellees.

SMITH, J. The sole question presented in this appeal is whether or not appellee, B. S. Walker, is such a resident of Tarrant county as to fix venue therein as to him, he having been sued in that county, along with residents of other counties. Pleas of privilege were filed alleging that Walker was a resident exclusively of Stephens county, to which the suit was sought to be transferred. Upon a hearing the pleas were sustained, and the cause ordered transferred. This appeal is from that order.

Walker was the only witness upon the issue of whether or not he was a resident of Tarrant county. His testimony was freely given, was without evasion, and his commendable frankness has served to greatly simplify what might otherwise have been a difficult question. His testimony was undisputed, and from it the court below concluded as a matter of law that he was not a resident of Tarrant county within the meaning of the venue statute, and upon that conclusion sustained the pleas.

[1] If the testimony in the case had conflicted to such an extent as to warrant a finding either way, upon the issue of residence, then a determination by the trial court of such question of fact, thus raised, would in either event have been binding upon this court. But, as the testimony was undisputed, the question of its effect becomes one purely of law, upon which this court must satisfy itself without reference to the conclusion reached by the trial court, since the presumption in favor of a finding of fact upon disputed testimony does not attach to a conclusion of law drawn from undisputed evidence. West End Co. v. Grigg, 93 Tex. 451, 56 S. W. 49; Ry. v. Gaddis (Tex. Com. App.) 208 S. W. 895. The only question in the case, then, reaches this court as an original proposition.

[2] It should be said at the outset that Walker has resided at Breckenridge, in Stephens county, most if not quite all of his life, and still maintains his old home there, where, it may be further said, he and his family spend more of their time than at any other place. The existence of this fact, then, narrows the inquiry here to the question of whether or not Walker has also established and maintains a place of residence in Tarrant county, in addition to his residence in Stephens county; it being well settled that a person may maintain his residence in two different counties, in which case he may be sued in either county. Pearson v. West, 97 Tex. 238, 77 S. W. 944, and authorities there cited.

The statute (article 1830) provides that "no person who is an inhabitant of this state shall be sued out of the county in which he has his domicile," to which several exceptions are specified, the only one applicable here being (section 4, same article):

"Where there are two or more defendants (as is the case here) residing in different coun-

⊕=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ties, in which case the suit may be brought in any county where any one of the defendants may reside."

It has been settled by the decisions that "inhabitant" and "resident," and "domicile" and "residence," are interchangeable terms as used in this statute. Taylor v. Wilson, 99 Tex. 651, 93 S. W. 109; Pearson v. West, 97 Tex. 238, 77 S. W. 944; Brown v. Boulden, 18 Tex. 432.

The question presented has been written upon, and at great length, by many of the courts of this state. One of the earlier cases was that of Brown v. Boulden, supra, in the short opinion in which Justice Wheeler seems to us to have encompassed the whole spirit of the law which was designed to preserve to the citizen the right to be sued in the county of his domicile, and at the same time prevent him from evading venue of suits against him. In that case the defendant was in the midst of the process of abandoning his old home in one county for a new habitation in another. He had broken up his establishment, and left the home site, in the one, but had not moved his household goods or the other members of his family to the other, to which he in person, with part of his slaves and personal property, had gone for the purpose of preparing a place and building the necessary structures thereon for the reception of his family and household and personal effects. Suit was brought in the latter county, in which the trial court fixed the defendant's domicile. This finding was reversed by the Supreme Court, which held that the change of residence could not be regarded as completed until the defendant had actually established his family and affairs in the new site. It was said, however, that it was the manifest intention of the statute to reserve to every inhabitant of the state the right of being sued in the county of his residence, but that, to enable a defendant to claim this right, he should be able to point to his residence "by facts so certain and notorious as to enable the plaintiff, by the use of ordinary diligence, certainly to know where to bring his suit," and that—

"The fact of residence in a particular county ought not to be so uncertain and equivocal, nor ought the statute to be so strictly construed, as that the plaintiff shall be compelled, in a case rendered doubtful and uncertain by the conduct of the defendant, to decide rightly at his peril."

From this reasoning the court concluded that—

"If a defendant has a known residence, he must be sued in the county of his residence. But if he is in the act of removing from one county to another, and his affairs are in such a state, that it cannot be certainly known in which county his residence in fact is, we think it may be held consistently with the legislative

241 S.W.—46

intention, that the suit may be brought in either county."

The principle thus enunciated—that where the defendant is in process of removing from one county to another, thereby rendering it uncertain as to which is the county of his domicile, he may be sued in either county— has been broadened, so that now the rule is well settled that where an inhabitant has established two places of abode in different counties and uses them indiscriminately as places of residence, according to his pleasure or convenience, each constitutes his residence within the meaning of the venue statute, and he may be sued in either. The undisputed facts in this case bring appellant Walker clearly within this rule, as will be shown by a statement of the evidence.

[3] As stated, Walker had always resided and maintained his home in Breckenridge, Stephens county, where he exercises all the privileges of citizenship, voting, doing jury service, and maintaining his church membership there, and where practically all his business interests, which were very extensive, were located. And while he was not as emphatic as he might have been as to his future intentions, it may be conceded that the effect of his testimony is that because of a commendable sentiment and appreciation for the place where he had resided so long— where he had reared his family, where his lifelong friendships had matured, and where he had amassed the great fortune he had acquired—it is his desire and purpose, as well as that of his family, to always make their home there to the extent of calling it "home," and exercising the more intimate privileges of citizenship there. But, in addition to rather than in spite of this relationship to Breckenridge, Walker, in December, 1919, purchased an elaborate residence in Fort Worth, paying $65,000 for it. He completely furnished and equipped it for the purpose of living in it with his family and entertaining his friends, whenever the family had occasion to be in Fort Worth. He installed a telephone in the house, listing and maintaining it in his name, and in various other ways, according to his testimony, impressed the place with every attribute of a home. He testified, in part, by deposition taken a short time after the filing of the suit:

"I am a married man. I have three children, aged respectively, 19, 17, and 6; all three girls. Their names are Gladys, Pansy, and Joe Alice. I own a residence in Fort Worth, Tex., situated at 1433 Pennsylvania avenue. We occupy that residence part of the time. By 'we' I mean myself and my family, those of us that are there. My family consists of myself, B. S. Walker, my wife, and three daughters, and the time that we are in Fort Worth we occupy this residence. I bought this property the 1st day of December, 1919, and since that time myself and my family have occupied the property, I will say, one-fourth of the time; not exceeding

one-fourth of the time. During that time these premises have been occupied by nobody else other than myself and my family, and whatever friends we have who have visited us there.

"I judge that we occupy it as a home; we sleep there and we eat there part of the time. We have domestic servants there; we do cooking and housework; we keep automobiles, and part of the time we have employed a chauffeur there to drive that automobile. He was employed for the purpose of driving the automobile for the pleasure of my family. * * *

"My wife is in Fort Worth to-day, in this house at 1433 Pennsylvania avenue. One of my children goes to school at Texas Christian University, and the other goes to a private school there, three or four blocks from this house at 1433 Pennsylvania avenue. All three of the children have been going to school in Fort Worth all year. The oldest one has been going to school there for two or three years. The youngest one goes to the private school, which is a kindergarten, and has been going there about two weeks. The oldest child is not in school now, for the reason that she has had an operation for appendicitis, and has had to stay out of school. The operation was had some time last year. I think when she left the hospital she was brought to Breckenridge. She has been back in Fort Worth probably 30 days at this time. My wife has been in Fort Worth on this last trip two or three weeks. * * *

"I have owned this house at 1433 Pennsylvania avenue in Fort Worth for about a year and three months. I would be safe in saying that myself and my family have not spent over one-fourth of our time there since we owned it; there has not been over one-fourth of the time that any of us have been in the house. I would not have any way of determining how many different trips we have made to the house since we have bought it, but I would say that we have been there as much as twice a month. I doubt if it would average that, but the last six or eight weeks I have been there on an average twice a month. These visits average from one to four or five days. I am there upon some occasions when my family is not there.

"When school is not in session and my children are not in school, my family spends the smallest portion of their time at the house in Fort Worth. I think we left the same evening for Breckenridge when school was out. During vacation we spend practically all of our time at Breckenridge or on some business or pleasure trip until time for the children to go back to school.

"It is a fact that I maintain this piece of property in Fort Worth as a convenience to myself and family, and in order that my wife may look after the children while they are in school, and that I may have a place to stop when in Fort Worth without having to put up at a hotel. * * *

"I expect to maintain a home and my real home in Breckenridge. As a matter of sentiment, I do not want to abandon the place, where I have lived for many years and accumulated my wealth and what I have of worldly goods, and the sentiment and the feeling is such that I have no notion of doing that. I have no notion of abandoning that home. But I acquired this piece of property on Pennsylvania avenue for the purpose of occupying it with my family from time to time for my own convenience and to give my children the advantages of the schools and things of that kind. And since I purchased it I have occupied it not to exceed one-fourth of the time for these purposes, and while we are there we occupy it as a home and have domestic servants there, and we eat there and sleep there, and my wife and one of the children were there yesterday. My six year old child goes to kindergarten school within two or three blocks of the house. * * *"

Walker also testified at some length upon the hearing of the plea of privilege, six weeks after his depositions were taken; but the effect of this testimony was, more than anything else, to emphasize his intention never to abandon Breckenridge as his real home, and that he purchased the Fort Worth place simply as a matter of convenience of himself and family, while in Fort Worth. He testified, at that time, too, that he was not spending more than one-fifteenth of his time in Fort Worth. But whether that fact was or was not material, we must assume that it related to the period following the taking of his depositions, and did not relate back to the period prior to the taking of his depositions, thus conflicting with his former testimony. The conditions existing at and prior to the filing of the suit control the question if those conditions subsequently changed. His testimony given upon the trial is fairly summarized in this extract therefrom:

"I bought and maintained this place in Fort Worth as a matter of convenience for myself and my family. It is convenience because I make numerous trips to Fort Worth and these trips took up a good deal of my time, and my wife and children have always liked Fort Worth pretty well, and they thought it would be nice to come down here when we wanted to. The purpose of these trips to Fort Worth and the occasions upon which it was necessary for me to come to Fort Worth were for business. It is a fact that I transact quite a deal of business in Fort Worth, Tarrant county, Tex., and by reason of my transacting so much business here it became convenient for me to buy and acquire a house to stay in while in Fort Worth on that business. It is a further fact also that the school advantages in Fort Worth are much better than they were in Breckenridge, and that was a contributing factor with me in making up my mind to acquire this property; that had something to do with it; for the purpose of bringing my children to Fort Worth that they might enjoy the school advantages of this city. The house is in a good neighborhood, and in one of the select residence portions of Fort Worth, and when I bought it I thought it was as good an environment as my family could be placed in."

The testimony of Mr. Walker speaks very plainly for itself, and in our opinion clearly and conclusively establishes as a matter of law that, at the time of the filing of this suit, Walker was a resident of Tarrant coun-

ty, within the meaning of the venue statute as it has been construed by the decisions, and was properly sued there. Pearson v. West, supra; Littlefield v. Clayton, 194 S. W. 194.

The order sustaining the plea of privilege is reversed, and it is the order of this court that the trial judge proceed in due course with the trial of the cause on its merits. All costs incurred by reason of the pleas of privilege will be taxed against appellees.

Reversed and remanded, with instructions.