## TEMPLE LUMBER CO. v. KIRBY LUMBER CO.

No. 1908.

Court of Civil Appeals of Texas. Beaumont.

Oct. 14, 1931.

Rehearing Denied Nov. 4, 1931.

R. E. Minton, of Lufkin, Minton & Minton, of Hemphill, and W. T. Davis, of San Augustine, for appellant.

Andrews, Streetman, Logue & Mobley and Williams, Lee, Hill, Sears & Kennerly, all of Houston, and T. B. Hamilton, of Hemphill, for appellee.

WALKER, J.

The history of the title to the James S. Ogden survey of 640 acres, patent No. 637, in Sabine county, Tex., subsequent to the common source, is as follows: Thompson Allen was the common source of title. Holding under the common source, on October 10, 1879, John Allen conveyed an undivided one-sixth interest in the Ogden survey to John A. Morris, and on the 29th day of September, 1879, W. W. Allen also conveyed an undivided one-sixth interest to Morris. On the 7th day of July, 1891, Morris conveyed his undivided one-third interest to J. O. Toole, who, on the 10th of July, 1899, conveyed the same interest to A. D. Hamilton, who, on the 5th of December, 1901, joined by John H. Kirby, conveyed the same interest to Houston Oil Company. On the 4th of August, 1916, Houston Oil Company conveyed this same interest to Southwestern Settlement & Development Company. Afterwards, joined by Houston Oil Company, Southwestern Settlement & Development Company conveyed the timber on this one-third undivided interest to Kirby Lumber Company. Every conveyance in Kirby Lumber Company's chain of title described the one-third interest held by it as an undivided interest.

Temple Lumber Company's title, under the common source, originated on the 22d day of July, 1879, under a deed whereby Cornelia L. Oliver conveyed to Levi T. Allen her undivided one-sixth interest in the Ogden survey. On the 10th of December, 1881, Levi T. Allen conveyed to W. W. Weatherred an undivided two-sixths interest in this survey. On the 15th of October, 1881, Jerusha C. Speights, joined by her husband, conveyed her undivided one-sixth interest in this survey to W. W. Weatherred. On the 10th of December, 1881, Weatherred conveyed to Benjamin F. Van Meter a specific 427 acres on this survey, describing it as follows: "Four hundred and twenty seven acres off of the James S. Ogden survey of six hundred and forty acres, it being the tract of land described in Patent No. 367, Vol. 2 issued by the State of Texas to James S. Ogden on the 3rd day of Nov. A. D. 1849, situated in Sabine County, Texas, about five miles east of the town of Milam. The land hereby conveyed is all of said Ogden survey except two hundred and thirteen acres off of the east end of said tract owned by John A. Morris, for more particular description of said survey reference may be had to the county records of Sabine County."

By deed dated the 20th day of January, 1883, Van Meter conveyed his 427 acres to C. P. Huntington, describing it as follows: "Four hundred and twenty-seven (427) acres of the J. S. Ogden survey, deeded to me by W. W. Weatherred by deed dated Decr. 10th 1881, and recorded in records of Sabine County, Book D pages 426 & 427."

On the 28th day of September, 1898, Mr. Huntington conveyed the same land by specific description to George E. Downs. In the field notes of the 427 acres, the following references were made: "Also the northeast corner of the Morris 213 acre tract out of this survey"; "for the southwestern corner of the Morris 213 acre tract out of this survey"; "the northwest corner of said 213 acres." This description concluded as follows: "Being the same property conveyed to me by B. F. Van Meter as shown in his deed recorded Vol. E. pg. 105 Sabine Co."

By regular chain of title under the common source, including the deeds just described, Temple Lumber Company acquired title to an undivided two-thirds interest in the Ogden survey not later than 1910. It thus appears that in some of the deeds through which Temple Lumber Company must claim its interest was described by specific metes and bounds as being 427 acres, while in other deeds it was described merely as an undivided interest.

About the year 1880, the exact date not shown, John A. Morris, under whom Kirby Lumber Company holds, at a time when he owned his interest in the Ogden survey, surveyed as his part 213 acres out of the southeast corner of the 640 acres. This was done upon agreement with one of his cotenants. As long as he held title to his interest in this survey, he claimed only this 213 acres, but he claimed it affirmatively, to the exclusion of his cotenants. While he claimed it, he cut and removed a large part of the timber therefrom; built a house thereon, in which he kept tenants for several years; and also built a

sawmill within a few feet of one of the lines to the 213 acres, upon which he manufactured into lumber the timber cut therefrom. When he sold his interest to Toole on the 7th day of July, 1891, he sold the specific 213 acres, and pointed out to him his lines to this tract of land, though, in describing the land in his deed to Toole, he described it as an undivided interest. Toole cut some of the timber from the 213 acres, and did not claim any other part of the survey, but, when he sold his interest to A. D. Hamilton, he conveyed it as an undivided interest. Hamilton bought, believing he was acquiring an undivided interest in the entire tract, and, when he sold to Houston Oil Company, he thought he was conveying, and attempted to convey, an undivided one-third interest. Under like conditions, Houston Oil Company conveyed to Southwestern Settlement & Development Company, and it conveyed to Kirby Lumber Company. Neither of these grantors had actual knowledge of the partition made by John A. Morris, and were good-faith purchasers, unless given constructive notice of the partition by the recitals in the chain of title of Temple Lumber Company and by the physical facts upon the 213 acres when they purchased their interest. In this connection it was shown that the lines around the 213 acres had been renewed at different times from 1880 to 1924, and that at all times from the date of the Morris occupancy there was evidence on the ground of the cutting of the timber and of the sawmill and of the other improvements made by Morris. The partition was also shown by general reputation. There was no sign of timber cutting on any other part of the 640 acres.

Temple Lumber Company acquired and held its interest in the belief that Kirby Lumber Company and Southwestern Settlement & Development Company owned the specific 213 acres, and that it was the owner of the remaining 427 acres. In this belief Temple Lumber Company began cutting the timber on the 427 acres, when Kirby Lumber Company sent it the following telegrams:

"Houston, Texas, October 18,' 1924. "Temple Lumber Company, Pineland, Texas.

"Surprised to hear you are cutting timber from Ogden survey in Sabine County. We own one third undivided interest in this. Please stop cutting immediately until we can make a satisfactory partition. Answer quick.
"Kirby Lumber Company,
"By H. M. Seaman."

"Houston, Texas, October 20, 1924. "Temple Lumber Company, Pineland, Texas.

"Your wire received. Our interest in this survey is an undivided one third being the interests of John W. Allen and W. W. Allen no partition has been made please let us have your assurance cutting of timber on this survey will be immediately discontinued until we can make satisfactory partition. Answer quick.
"Kirby Lumber Company,
"By H. M. Seaman."

"Houston, Texas, October 20, 1924. "Temple Lumber Company, Pineland, Texas.

"Since our wire date Mr. Kenley has phoned you contend oral partition of Ogden survey was made by some of our predecessors in title. Neither Kirby Lumber Company nor Houston Oil Company under which we hold has had any notice or knowledge of any partition and if you continue cutting in disregard of our one third undivided ownership of timber on this entire survey we will expect to look to you for manufactured value for so much of our timber as you may cut.
"Kirby Lumber Company,
"By H. M. Seaman."

Notwithstanding these telegrams, which were duly received, Temple Lumber Company proceeded to cut all the timber from the 427 acres, but cut no timber from the 213 acres.

This suit was brought by Kirby Lumber Company against Temple Lumber Company to recover the manufactured value of one-third of the timber cut by it from the Ogden survey, and, if not entitled to the manufactured value, then for the stumpage value. The answer of Temple Lumber Company was sufficient to raise the legal propositions hereinafter discussed. The case was tried to a jury. The manufactured value was shown to be $29.25 per thousand feet and the stumpage value $5 per thousand feet. The jury found on the entire survey a total of 12,783,-325 feet, and standing on the 213 acres 2,783,-325 feet, and that Temple Lumber Company had cut and removed from the entire survey 10,000,000 feet. The jury further found that the cutting of the timber by Temple Lumber Company was "negligent and in reckless disregard" of the rights of Kirby Lumber Company. Upon these findings, the court entered judgment to the effect that Kirby Lumber Company owned an undivided interest of 4,-261,108 feet in the timber on the entire survey, from which the court deducted 2,783,325 feet left standing on the 213 acres, leaving a balance of 1,447,703 feet belonging to Kirby Lumber Company which Temple Lumber Company had appropriated, for which judgment was entered in favor of Kirby Lumber Company at the rate of $29.25 per thousand feet, manufactured value, amounting to $43,-372.93, with the additional sum of $10,409.48 interest, less a credit of $681.43 for timber cut from the 213 acres on issues not involved in this appeal. The total judgment was $53,100.-98. Against the judgment, Temple Lumber Company has duly perfected its appeal to this court.

Opinion.

On the undisputed facts, at the time John A. Morris surveyed off his 213 acres, the

entire tract of 640 acres was of uniform value, and, in appropriating the specific 213 acres, he claimed no more land than he would have been entitled to under a judicial partition, but claimed all that he would have been entitled to. Thus, in claiming the specific 213 acres, he effected an equitable partition with his cotenants, which, as between him and them, and those holding under him with knowledge of the partition, the courts would enforce. Though this act of partition was valid and legally enforceable against those with knowledge thereof, there was nothing in its nature to affect Morris' remote grantees, buying without notice. So, if appellee, in fact, acquired its title as an innocent purchaser, without notice of the partition, it was not bound thereby, but would be entitled to hold the one-third interest granted to it by its deed, "subject to such equities as may arise between tenants in common." Allday v. Whitaker, 66 Tex. 669, 1 S. W. 794, 796.

■■ Though appellee Southwestern Settlement & Development Company, Houston Oil Company, and A. D. Hamilton had no actual notice of the partition, appellant insists that the recitations in the deeds in its chain of title and the evidence of Morris' occupancy and the general reputation of the partition in the community where the land was situated was sufficient, as a matter of law, to visit them with notice. This proposition is not sound. The evidence by general reputation of the partition was without probative force, unless it was shown that appellee and its grantors knew this general reputation. The most that could be said in appellant's favor is that this was a controverted issue. The evidence that Morris occupied the land and cut timber therefrom did not constitute notice, because it was entirely consistent with his record title of ownership of an undivided one-third interest in the land. Allday v. Whitaker, supra. It was a mere circumstance to be considered and weighed by the court or jury in connection with the other evidence in the case. The most serious question on the issue of notice, as a matter of law, is the legal effect of the many recitations in appellant's chain of title, to the effect that Morris had made a partition of the land by appropriating the specific 213 acres. If the law visited appellee and its grantors with notice of these recitations, then, in law, they were not innocent purchasers, and their claim would be limited to the specific 213 acres. Because these recitations were in appellant's chain of title and not in appellee's chain of title, appellee insists that the registration of appellant's deeds was immaterial on the issue of notice, citing in support of this proposition White v. McGregor, 92 Tex. 556, 50 S. W. 564, 565, 71 Am. St. Rep. 875, where Judge Gaines, speaking for our Supreme Court, said: "The registry of a deed is notice only to those who claim through or under the grantor by whom the deed was executed."

That case does not control this proposition, for in Allday v. Whitaker, supra, discussing the deeds of a cotenant as constituting notice of a parol partition, Judge Stayton said: "Facts may have existed which would justify a court or jury trying the case to find that the appellant had notice of the parol partition at the time he purchased, but, if so, they are not shown by the record before us. If, after the parol partition, Frunk had assumed the right to sell the entire property in the lots on the west side of the railroad, and had done so by many deeds, put upon record before the appellant purchased, and a like right was assumed and often exercised by Cobb as to the lots on the east side, these and like facts might be looked to upon the question of notice to the appellant."

We construe this language not only as denying the proposition that the recitations in appellant's chain of title constituted notice, as a matter of law, but also appellee's proposition that they were not evidentiary on the issue of notice. Under Allday v. Whitaker, supra, these deeds were evidence on this issue, and it was for the jury to say whether or not, in view of all the circumstances in the case, the recitations in appellant's chain of title, the lines around the 213 acres, the evidence on the ground of Morris' occupancy and cutting the timber, and the general reputation of the partition, a man in the exercise of ordinary care would have discovered the partition. That issue was not submitted·to the jury, but was found by the court against appellant's contention. Under the facts, we would not be authorized to set the finding aside. It follows that the act of John A. Morris in surveying off the 213 acres and claiming it as his own, in so far as it constituted an equitable partition, passes out of the case.

■ We will next consider the equities between appellant, holding title to an undivided two-thirds interest in this survey, whose grantors had not appropriated anything from the land, and appellee, holding an undivided one-third interest in the timber, whose remote grantors, John A. Morris and J. O. Toole, had created waste upon the land by cutting and removing therefrom timber of great value. The question is whether or not, in a partition proceeding, equity would compel appellee to account for the value of the timber thus appropriated by its remote grantors. If appellee had owned an undivided one-third interest in the land and timber, and the land had value only as agricultural land, and the removal of the timber enhanced its value as such, could it be questioned that equity, in a partition proceeding, would set aside to appellee the 213 acres thus improved by its grantors? In a partition proceeding, if a cotenant is entitled to the improvements made by his grantor, he must also be bound by his waste. This identical proposition was be-

fore the New Jersey courts in Polhemus v. Emson, 30 N. J. Eq. 405. On the issue of the equities between appellant and appellee, we consider the facts of that case on all fours with the facts of this case, and, as the court's discussion presents our view of the law on this issue, we give the opinion in full as follows:

"The facts in this case are fully stated in a former opinion (Polhemus v. Empson, 12 C. E. Green, [27 N. J. Eq.] 190). This suit is brought for relief against a partition which, when the bill was filed, was about to be made at law of a tract of woodland in Ocean county. The land was held by the complainant and Emanuel Hodson, as tenants in common, from May 1st, 1852, up to August 21st, 1865, when a voluntary partition thereof, by deed, was made between them. In 1861, the defendant recovered a judgment, in the court of common pleas of Ocean county, against Hodson, and, in 1871, under an execution thereon, caused Hodson's interest in the property to be sold, and purchased it at the sheriff's sale. After obtaining a deed from the sheriff, he instituted proceedings at law for partition between him and the complainant, and this suit was brought for relief against that partition. In 1869, three years before the sheriff's sale, Hodson sold the timber off the part of the land which had been assigned to him in the voluntary partition between him and the complainant. On the part assigned to Polhemus, the timber still remained. There were no improvements on the land, and it is of little or no value without the timber. When this cause was brought to final hearing, in 1876, it was decreed that the voluntary partition was binding on Emson, the judgment creditor. This view was not concurred in by the court of errors and appeals (Emson v. Polhemus, 1 Stew. [28 N. J. Eq.] 439), and the decree was, therefore, reversed, and the record remitted to this court, with direction that the cause be proceeded in here according to the law and the practice of this court. A motion was thereupon made in this court to dismiss the bill. It was denied on the ground that the appellate tribunal had not passed upon the question of the right of the complainant to have the partition made on equitable terms. Polhemus v. Emson, 1 Stew. [28 N. J. Eq.] 576. From the order made on that decision, an appeal was taken which resulted in an affirmance. Polhemus v. Emson, 2 Stew. [29 N. J. Eq.] 583. The complainant having amended the prayer of his bill so as more distinctly to ask for partition on equitable terms, the cause again came on for final hearing.

"It is very clear that, unless the wasted part of the land in question is assigned in partition to Emson, a great wrong will be done to Polhemus. There is no doubt that equity can prevent the injustice. If, instead of divesting the part of the land assigned to him of its timber, and so depriving it of its value, Hodson had put valuable improvements upon it, the purchaser under the judgment would, in equity, have been entitled to the benefit of those improvements. Polhemus would have had no claim, in equity, to them. If Polhemus had wasted his part of the property, he would have been compelled, in equity, to take it in the partition between him and the purchaser under the judgment. Equity requires that a purchaser of a judgment debtor's interest, as tenant in common of land, should, on the one hand, have the benefit of the equities in favor of the judgment debtor, as between him and his co-tenant; and that, on the other hand, he should take it subject to the equities against the judgment debtor in respect of waste committed by him.

"The partition will be made under the direction of this court, and the commissioners will be ordered, in making it, to assign to Emson, for or on account of his share, the part assigned to Hodson in the voluntary partition, at the value thereof when that partition was made."

Though the evidence on the ground did not, as a matter of law, visit appellee and its grantors with notice of the partition made by Morris, because consistent with his record title, it was sufficient to visit all persons holding under Morris, and Morris' cotenants, with notice that some one or more of the cotenants had committed waste upon the land. Being thus visited with this notice, it must be said, as a matter of law, that, had appellee or its grantors followed up this notice with any sort of diligence, they would have discovered that their remote grantor committed the waste, and that they acquired his title subject to the equitable right in their cotenants to charge them with the waste committed by their remote grantor Morris. Appellee would answer this conclusion by the following argument: "Appellant makes an effort to claim that it should have offset the timber cut by Mr. Morris in the early eighties, basing such contention on the language in Allday v. Whitaker 'subject to such equities as may arise between tenants in common.' In that case there was then on the land permanent improvements of value and the trial court had denied the right to the value thereof. The case was reversed to have the value of such valuable improvements then on the land adjusted. So that was an entirely different situation from the one now before the court, where timber was cut nearly fifty years ago and where the appellee is a bona fide purchaser in regard thereto. The plain answer to this, however, is that such right of adjustment was at most only an equity that laches long since has quieted. But even if an equity be asserted by Temple the fundamental maxim that, he who seeks equity must do equity, applies. Instead of doing equity, Temple negligently and in reckless disregard of Kirby's right, as found by the

jury, in disregard of the telegrams, in disregard of every conceivable right that Kirby might have had in the premises, went on this land and destroyed the very property of the cotenancy. As held by the above authorities this amounts to a conversion and Kirby Lumber Company is entitled to recover therefor. If Temple was entitled to any adjustment for timber cut fifty years ago, which we most emphatically deny, the burden was on Temple to show the quantity and value of the timber, and in this respect Temple wholly failed to make plea or proof."

We do not believe that this argument is sound. In this case, as in Allday v. Whitaker, there was evidence on the ground of the occupancy of the cotenant who made the equitable partition; the difference between the two cases being that in the Allday Case the evidence of the occupancy was improvements of value, while in this case the evidence of the occupancy constituted waste. This difference does not distinguish the two cases in law. Appellee correctly asserts that appellant's right to charge it with the timber cut by Morris "was at most only an equity," but it erroneously asserts that this right was barred by laches. Appellant's right to charge appellee with the timber cut by Morris was not subject to the defense of laches. Affecting title to land, laches is not a defense, except where the facts bring the case within the provisions of our statutes of limitations, and no issue of limitation was raised herein. To have the benefit of this proposition, appellee correctly asserts that it was necessary for appellant to show the quantity and value of the timber cut by Morris and Toole. This issue was established by showing that the land was of uniform value.

From what we have said the judgment of the lower court in favor of appellee must be reversed and judgment here rendered in appellant's favor.

Appellant has additional propositions constituting reversible error which we do not discuss because of our order reversing and rendering the judgment of the lower court.

Reversed and rendered.

### On Rehearing.

While not filing a motion for rehearing, appellant has asked us to reverse our judgment, affirming the conclusion of the trial court that appellee bought its one-third undivided interest in the Ogden survey without notice of the parol partition made by Morris. The material facts on this issue are reflected by the original opinion. We agree with appellant that uncontroverted testimony, with nothing in the record to detract from its weight, must be taken as true, and that the trial judge and jury cannot disregard it in making their findings of fact. McKeever v. Dittman (Tex. Civ. App.) 262 S. W. 1054;

Thomas & Co. v. Hawthorne (Tex. Civ. App.) 245 S. W. 966; Funk v. Walker (Tex. Civ. App.) 241 S. W. 720; Gulf, C. & S. F. Railway Co. v. Gaddis (Tex. Com. App.) 208 S. W. 895. But this proposition is controlling where only one inference can be drawn from the admitted or undisputed facts; otherwise the ultimate conclusion of the trial court or jury is binding on the appellate court, unless set aside as being so against the great weight and preponderance of the testimony as to be clearly wrong. This principle is well illustrated by the holding of our courts on the issue of contributory negligence, as in Trochta v. Railway (Tex. Com. App.) 218 S. W. 1038. In that case the issue was as to the proper conclusion to be drawn from the facts. The jury finding that the deceased was not guilty of contributory negligence was affirmed by the Supreme Court. So in this case the issue, as in contributory negligence cases, was the duty imposed upon a man of ordinary care. We think on this issue it was for the trial court or the jury to determine the inference arising from the undisputed facts.

Supplementing the proposition just discussed, appellant says that the recitals in the deeds, "if entitled to be considered at all," were sufficient, in connection with the other facts, to put appellee upon inquiry, citing Jones v. Berg, 105 Wash. 69, 177 P. 712; 20 R. C. L. 353. This proposition made a strong appeal to the court on original submission, but we thought it was met and answered by the quotation made by us from Allday v. Whitaker, where facts much stronger were summarized by the court and held only to raise the issue for the jury. On this issue appellant has not commented on the holding in Allday v. Whitaker.

Also, appellant advances the following additional proposition, which we cannot sustain: "It being undisputed that on December 10, 1881, appellant's predecessor in title selected out and conveyed to appellant's remote grantor a particular tract of the Ogden Survey, leaving a sufficient amount of land to satisfy the claim of the owner of the remaining 2/6ths interest, which is now held by appellee, such conveyance was valid, and at the most was voidable only at the instance of the other cotenant, and then only on showing that his right was thereby prejudiced; and in order to avoid the conveyance of this specific tract of 427 acres to Weatherred, and in order for it to recover, it was incumbent on appellee to show that the partition thereby effected of the land was at that time inequitable and unfair; and this it did not do and under the undisputed proof could not have done."

This proposition ignores the fact that appellee was an innocent purchaser against the parol partition made by Morris and the fact that appellee had no notice that appellant's predecessor in title selected out and conveyed to it a specific 427 acres. If the record were

sufficient to visit appellee with notice that appellant's predecessor in title conveyed a specific 427 acres, the record would also be sufficient to give it notice of the Morris partition, and this notice would end the case. This proposition could have controlling effect only if the record showed that appellee and those under whom it holds acquired their undivided one-third interest in this land with knowledge that, when appellant's predecessor in title conveyed to it the specific 427 acres, the entire survey was of equal value, acre for acre. McKey v. Welch, 22 Tex. 390.

Also on rehearing appellant insists that a purchaser from a tenant in common takes his interest burdened with all existing equities, "and this, regardless of the question of notice," citing Clark Bros. v. Watson, 180 Iowa, 721, 163 N. W. 463; Nickels v. Miller, 126 Va. 59, 101 S. E. 68; Peets v. Wright, 117 S. C. 409, 109 S. E. 649. Allday v. Whitaker expressly denies this proposition in so far as it relates to an equitable partition. However, the Supreme Court was careful in that case to limit its holding to the issue of partition by saying that, though one may be an innocent holder against an equitable partition between his grantor and his grantor's cotenants, yet the purchaser acquires his interest "subject to such equities as may arise between tenants in common." In view of the fact that we are convinced beyond a shadow of doubt that appellee was visited, as a matter of law, with notice of the waste committed by his remote grantors, we do not deem it necessary to determine the merits of this proposition, as a principle of the jurisprudence of this state.

This brings us to a discussion of appellee's proposition that the language quoted above from Allday v. Whitaker that one purchasing from a tenant in common acquires his title subject to existing equities means equities that "may arise between them in personam, and not in rem." We understand that appellee advances this proposition only on the theory that it was an innocent purchaser against the existing equities; so, as we have held against it on that theory, this proposition passes out of the case.

However, appellee vigorously asserts that we are in error in our conclusion that it was visited by law with notice that its remote vendors committed waste upon the 213 acres set apart to it by appellant. Thus it says a trespasser may have cut the timber, meaning that the physical facts on the ground were not sufficient to show that the timber was cut by its remote grantors when in fact it may have been cut by a trespasser. This contention is without merit. While ordinarily the question of notice is a jury question, as we hold above, yet, when certain facts are called to a purchaser's attention, sufficient, if followed up with diligence, to visit him with notice of existing equities, the law visits him with such notice as fully as if the equities had been directly called to his attention. This is the doctrine of Bounds v. Little, 75 Tex. 320. 12 S. W. 1109.

Also appellee says we are in conflict with Allday v. Whitaker, which holds that the interest of a tenant in common may pass to a bona fide purchaser, and "this court now holds conflicting therewith in holding that appellee is chargeable with equities unknown to it." We expressly recognize the force of Allday v. Whitaker, and predicate our holding thereon that appellee was not visited with notice of the parol partition made by Morris. But, as said above, the Supreme Court expressly limited that case to the issue of partition. In our original opinion we found that appellee was visited with notice of the waste because it was compelled, as a matter of law, to know that timber had been cut and removed from the 213 acres, and was also compelled by law to follow up this information, which, had it been duly prosecuted, would have led to the fact that the timber on the 213 acres was cut by Morris.

Appellee apparently concedes that between Morris and his cotenants he was bound to account for his waste. Thus it cites Davis v. Palmer, 78 N. J. Eq. 78, 81 A. 573, 574, and Woolston v. Pullen, 88 N. J. Eq. 35, 102 A. 461, 462, both cases citing Polhemus v. Emson, cited by us in our original opinion. In the Davis Case the court said: "The rule of equity is well settled that where one tenant in common * * * has wasted a portion [of the land] * * * the partition often must be made so as to recognize all equities."

In the Woolston Case it is said: "Where one of the tenants has wasted part of the land, the part so wasted will be set off to him."

However, appellee would distinguish these cases on the ground that: "Neither case involved a bona fide purchaser. Both suits were for partition. This case does involve a bona fide purchaser. This case is not for partition."

 While not a suit for partition, yet, as we say in our original opinion, appellee has only such rights as could be asserted in a partition suit, that is, the right for an accounting. If we are correct in visiting appellee with notice of the cutting by Morris and Toole, of course, this case does not involve a bona fide purchaser. We think the Polhemus Case, as well as the two new cases cited by appellee, directly support our conclusion. See, also, Campbell v. Campbell (Tex. Civ. App.) 145 S. W. 638 and Stuart v. Teagarden (Tex. Civ. App.) 193 S. W. 416.

 In our original opinion we said: "There was no sign of timber cutting on any other part of the 640 acres." We took this state-

ment, as we had a right to do under the rules, from appellant's brief, and assumed it was correct because it was not challenged by appellee. However, as appellee now shows that one McGown cut some timber from the 427 acres, we correct our opinion to reflect the true facts. But the issue is immaterial. Appellant left for appellee's use all the timber on the 213 acres claimed by Morris, which was, at the time Morris owned it, of equal value, acre per acre, with the balance of the timber. So it becomes immaterial that some one may have cut timber from the 427 acres. Whether the cutting was much or little, appellant has not charged it against appellee. Appellee and its grantors were entitled to one-third of the timber on the entire survey. By giving appellee the timber on the 213 acres and charging it with the timber cut by Morris and Toole, appellant has done it no wrong. This is all we meant in our original opinion where we said: "It was necessary for appellant to show the quantity and value of the timber cut by Morris and Toole. This issue was established by showing that the land was of uniform value."

Appellee is therefore in error in saying that we have charged it with all of the cutting. Our judgment charges it only with the cutting from the 213 acres.

By visiting it with knowledge of equities not subject to registration, appellee insists we are in conflict with the registration statutes. This proposition would be before us only if we had held with appellant's contention that appellee was chargeable, as a matter of law, with the waste committed by Morris and Toole, "and this regardless of the question of notice." But, since we are holding that the physical facts upon the ground visited appellee with notice, the registration statutes are not in issue.

Appellee also insists that we are in error in refusing to hold that the equities now asserted by appellant were barred by laches. In Jackson v. Beach (N. J. Err. & App.) 3 A. 375, the court said that an accounting for waste, by cutting and carrying away timber, against a tenant in common, "is not barred by the statute of limitations." If not subject to the statutes of limitation, this equity could not be within the equitable rule of laches.

■ Finally, appellee says our judgment cannot stand, "because there was no pleading upon which any such judgment could be based"; and, further, that we erred in holding "that an action for damages for trespass is a partition proceeding." On this issue we say in our original option the question is whether or not, in a partition proceeding, equity would compel appellee to account for the value of the timber thus appropriated by its remote grantors. It was not our thought that appellee's suit was one for partition. In fact, it was not. Appellee now, as on original submission, insists that its suit was "for damages for trespass." But, even if appellee is correct in this contention, our judgment would not be error. Appellee could only prove a trespass against appellant as its cotenant by pleading and proving an ouster; that is, that appellant had entered and wrongfully denied it the right of entry. A complete defense to a charge of ouster was available to appellant under its general denial, and was sustained by the proof actually made in this case that it had not wrongfully denied appellee entry on the 427 acres because equity would compel it to confine its entry to the 213 acres; not on the ground that the 213 acres had been set apart to its remote grantors by a parol partition, but because it bought its undivided interest with knowledge that they had committed waste upon the specific 213 acres at a time when the timber thereon was of equal value, acre per acre, with the timber on the remaining 427 acres. As sustaining its argument that appellant could not have the relief we have granted it without affirmatively pleading its equities, appellee cites McKey v. Welch, supra; Peak v. Brinson, 71 Tex. 315, 11 S. W. 269; and Allen v. Allen, 101 Tex. 367, 107 S. W. 528. In the cases cited the court merely held that the defendant could not have affirmative relief on the particular issues discussed without praying for such relief. The issue of affirmative relief is not involved in this case. If appellee pleaded a trespass, it was required to prove a trespass, and to meet that issue appellant was entitled under its general denial to offer all testimony rebutting that theory of the case. Therefore, under its pleading, it was available for appellant to prove, as it did prove, that it had left for the use of appellee its full one-third interest in the timber; and this, not as the basis for affirmative relief, but only to rebut appellee's theory of the case. This proof was not in the nature of a confession and avoidance, nor in the nature of settlement or offset, but was merely proof negativing appellee's theory that it had committed the offense charged against it. Under this proof, on the theory of trespass, appellant was not seeking credit against appellee nor seeking to offset any demand appellee had against it, but merely to show that it was not guilty of ousting appellee from any rightful possession it had in and to the Ogden 640 acres. The legal effect of our judgment in favor of appellant is merely to find it not guilty of the trespass which appellee would charge against it. So, as the judgment grants no affirmative relief, it has full support in appellant's general denial. Horton & Horton v. House (Tex. Com. App.) 29 S.W.(2d) 984.

■ But we think appellee is in error in this construction of its petition. The ma-

terial allegations of the petition may be thus summarized. Both appellee and appellant were alleged to be corporations; appellee owned an undivided one-third interest in certain timber on the Ogden survey, the timber being fully described; "that afterwards, to-wit: on or about the said 15th day of October, 1924, and on various and sundry dates subsequent thereto, the defendant Temple Lumber Company entered upon said tract of land and cut and removed therefrom, and damaged and destroyed eleven million feet, log scale, of pine trees and timber eight inches and upwards in diameter at the stump twelve inches from the ground, and twenty-five thousand feet of hardwood trees and timber six inches and upwards in diameter at the stump, twelve inches from the ground, and appropriated and converted the same to its, said defendant's use and benefit"; before the timber was cut appellee notified appellant of its title and claim and protested appellant's right to cut the timber; the timber was cut and removed in reckless disregard of appellee's rights, as appellant had no title to appellee's one-third undivided interest; the value of the stumpage was alleged to be $15 per thousand and of the manufactured lumber $30 per thousand; the damages were fixed at $110,250, with interest from the date of the cutting; the prayer was for the damages pleaded and for general and special relief. It is the law of this state that a cotenant may maintain an action against his cotenant for trespass, but, to constitute a trespass, he must allege an ouster; that is, he must allege that his cotenant entered the common property, denying him the right of entry. Kishi v. Humble Oil & Refining Co. (Tex. Civ. App.) 261 S. W. 288; Van Deventer v. Gulf Production Co. (Tex. Civ. App.) 41 S.W.(2d) 1029. This is necessarily the rule, for all cotenants have equally the right of entry, and, unless an exclusive entry is alleged there is no trespass. In this case appellee alleged title to an undivided one-third interest. There is no allegation that appellant entered denying it the right of entry, nor is there an allegation that appellant cut all the timber from the entire survey, claiming ownership therein and denying ownership in appellee. So, as appellant had the right to enter under appellee's allegations, the petition should be construed merely as an action for accounting on the theory that appellant cut more than its part of the timber. By indulging its general intendments, the petition was only subject to this construction. The general denial controverted all issues raised by the petition as thus construed. 1 C. J. 630; Coburn v. Coke, 193 Ala. 364, 69 So. 574.

The motion for rehearing is in all things overruled.